William CARPENTER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S04–0204–CR–0257.

Supreme Court of Indiana.

April 14, 2003.

Lesa Lux Johnson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## ON PETITION FOR TRANSFER

SULLIVAN, Justice.

Defendant William Carpenter was charged with and found guilty of child molesting as a class A felony for performing deviate sexual conduct with his three-year-old daughter, A.C.[1] The Court of Appeals affirmed in a not-for-publication opinion. *William Carpenter v. State*, No. 49A04–0105–CR–181, 763 N.E.2d 499 (Ind. Ct.App. Feb.4, 2002). Defendant sought and we granted transfer. 774 N.E.2d 514 (table).

### Background

The evidence most favorable to the judgment indicates that on the morning of May 19, 2000, after Defendant had gone to work, A.C. complained to her mother that "her 'moo moo' hurt." She told her mother that "her daddy put his fingers in her 'moo moo' and that it hurt real bad." She also told her mother that "her daddy's 'moo moo' spit on her."

In addition to A.C.'s statements to her mother, the following additional evidence is of significance in this case: (1) the testimony of A.C.'s maternal grandfather as to a conversation he had with A.C. shortly after May 19, 2000; (2) a videotaped interview of A.C. conducted by Detective Karen Dague and Amy Hinshaw from Child Protective Services on May 19, 2000; and (3) a medical examination of A.C. conducted by Dr. Philip Merck at Wishard Memorial Hospital on May 19, 2000. The details of all of this evidence will be discussed *infra*.

Prior to the trial, Master Commissioner Diane Marger Moore conducted a "Child Hearsay Hearing" in which she determined that A.C. was not competent to testify. A.C. was cross-examined by defense counsel during this hearing. The trial court went on to rule that A.C.'s mother and grandfather could testify at trial as to the statements A.C. made to them and that the jury could view Dague and Hinshaw's videotaped interview with A.C.

### Discussion

This case requires us to determine whether certain out-of-court statements of a child witness found to be incompetent to testify at trial may be used as evidence in a child molesting prosecution. It requires us to examine the interrelationship of the Indiana Rules of Evidence and the Legislature's "protected person statute," Ind. Code § 35–37–4–6 (1998), and to revisit many of the issues we discussed in *Pierce v. State*, 677 N.E.2d 39 (Ind.1997).

■ There is no dispute that the statements made by A.C. to her mother and grandfather and those made to the detectives on the videotape constituted hearsay. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay evidence is inadmissible pursuant to Evidence Rule 802, unless it fits within a few well-delineated exceptions. *Miller v. State*, 575 N.E.2d 272, 274 (Ind.1991).

■ Hearsay is excluded from judicial proceedings because "its admission defeats the criminal defendant's right to confront and cross-examine witnesses against him." *Williams v. State*, 544 N.E.2d 161, 162 (Ind.1989). At the same time, "[h]earsay evidence often helps the jury find the truth; excluding hearsay testimony can deny the jury crucial evidence." Billie Wright Dziech & Charles B. Schudson, *On Trial* 136 (1991) (discussing confrontation and hearsay in child sexual abuse prosecutions). Likely in an effort to balance these

---

1. Ind.Code § 35–42–4–3(a).(1998).

competing interests, the Indiana General Assembly enacted the "protected person statute," Ind.Code § 35–37–4–6, setting forth a detailed set of conditions under which evidence that is "not otherwise admissible" will be allowed in cases involving crimes against children and individuals with certain disabilities. To the extent relevant to this case, these conditions provide that the statements and videotape would be admissible if (1) the trial court found, in a hearing attended by the child, that the time, content, and circumstances of the statement or videotape provided sufficient indications of reliability and (2) the child was available for cross-examination at the hearing.[2]

The facts here are highly reminiscent of *Pierce*. In each, a child made statements to relatives and in a videotaped interview to authorities that allege criminal sexual abuse of the child on the part of the respective defendants. The respective trial courts ruled the children were incompetent to testify at trial because they could not understand the difference between the truth and a lie. The rules prohibiting the use of "hearsay" ordinarily bar the prosecution from using such statements and videotape at trial as evidence against the defendant. But the court both in *Pierce* and in this case found the statements and videotapes admissible under the protected person statute.

Because of the similarity, we will use the analytical template of *Pierce* to examine Defendant's claims in this appeal.

### I

The essential facts in *Pierce* were these. At approximately 10 AM on November 18, 1993, Pierce enticed a child to his car from a Wal–Mart where the child had been shopping with her mother. Pierce returned her to the store shortly thereafter where she told her mother and, a few minutes later, arriving sheriff's officers that he had unbuckled her belt and put his hand down her pants. At the sheriff's recommendation, the mother then took the child to a doctor for a physical examination. The exam revealed no injuries. The mother then took the child to the sheriff's department for a videotaped interview with the sheriff. The interview began shortly after 2:30 PM. The videotape was not included in the record on appeal and we concluded that there was no showing that the videotape was more than cumulative of the statements the child made immediately following the incident. *Pierce*, 677 N.E.2d at 45.

The *Pierce* trial court held a hearing as required by the statute and concluded that both the child's statements at the Wal–Mart to her mother and the sheriff's officers and the videotaped statement given to the sheriff later in the day provided sufficient indications of reliability and were otherwise admissible under the protected person statute.

As Defendant does here with respect to the A.C.'s statements to her mother and grandfather, Pierce argued that the testimony recounting the child's statements to her mother and the sheriff's officers did not satisfy the statutory requirements of reliability. In holding the trial court within its discretion in allowing the testimony, we noted its findings that the statements were "spontaneous," that they occurred "a very short time" after the incident, that the child was "still excited" when the statements were made, and that "there was no time for an adult to plant a story in her

---

**2.** Additional statutory requirements to be satisfied on the facts of this case are not implicated by this appeal. These are found in

Ind.Code § 35–37–4–6(c)(2), (e), and (f) (1993).

head." *Pierce*, 677 N.E.2d at 45. We went on to note that these findings were supported by the record.

We were more skeptical of the trial court's finding that the videotaped interview was also sufficiently reliable. We expressed particular concern that the videotaped interview with the sheriff "did not occur until several hours after the alleged molestation. This passage of time tends to diminish spontaneity and increase the likelihood of suggestion. The interview took place after [the child] went through a potentially disorienting physical examination at a doctor's office. Moreover, [the child's] mother suggested several answers to [the child] during the interview and asked her leading questions." *Pierce*, 677 N.E.2d at 45.

However, we concluded that Pierce had not established reversible error since he made "no showing that the videotape was more than cumulative of the statements [the child] made immediately following the incident." *Id.*

## II

### A

We begin our analysis of the disputed evidence in this case with the videotape to which the State and Defendant give dramatically different characterizations. The State says:

[T]he trial court properly found that the videotape had sufficient indicia of reliability. As the trial court noted, A.C. spoke to two unknown adults. These adults spoke to A.C. on her level without attempting to overcome A.C.'s willingness to answer their questions. Further, the questions were not leading, nor where they suggestive of answers. Finally, throughout the interview, A.C. used consistent language and terminology with which she was familiar.

Br. of Appellee at 13 (citations to record omitted).

For his part, Defendant urges us to review the videotape ourselves. He says, "the child is often unresponsive and contradicts herself on even the most simple of information such as the name and age of her brother and herself. Most if not all of the questioning by the detective is leading as was noted by the trial judge." Appellant's Br. at 17.

Highly sensitive to our role as a court of review only, we have nevertheless reviewed the videotape. In the interview with a police detective and child welfare caseworker, A.C. said that her father "touched her moo moo." Several times in the interview, A.C. was asked questions about her "moo moo." The detectives asked her to "describe her moo moo"; "to draw her moo moo"; and "to point to her moo moo." Initially, A.C. responded either by shrugging her shoulders or telling the detectives, "I don't know." A.C. was also unable or unwilling to point to her knee, her eyes, or her nose. At one point, A.C. pointed at her finger and called it "her nose." However, A.C. did tell the detectives that she "would have to go home to show them" her moo moo. She also indicated that both the officer and her father had "moo moos." When asked if her "moo moo" was with her now, A.C. responded "yes." When asked if her "moo moo" was on her body, A.C. responded "yes." When the detective pointed to her head and feet and asked A.C. if either were a "moo moo," A.C. shook her head "no." She told the detectives that her father touched the "inside" of her "moo moo" with his hand. She said that it was the reason that she "had to go to the doctor." When asked by the detectives whether she had her pants on or off when her father touched her "moo moo," A.C. answered, "off." A.C. said that her father touched her "moo moo" when she was in her "bedroom with the door shut."

Later in the interview, when the detectives asked A.C. what she wore over her "moo moo," she answered, "tiny shorts." A.C. lifted her legs up and pointed to her underwear as she was answering this question. When the officers asked if her "moo moo" was under her pants, A.C. responded, "yes." A.C. told the detectives that she saw "daddy's moo moo." When asked by the detectives if her father had ever touched her with his "moo moo," A.C. said "no." However, A.C. told the detectives that her father "peed on myself." The detectives asked her if her father "peed" on her, A.C. responded "yes."

In reviewing the admissibility of the videotape at the Child Hearsay Hearing, the trial court noted that "[t]here were two adults unknown to A.C. in the room, and neither wearing a uniform of any type. Both were sitting at the child's level and in an innocuous environment." The court found "inconsistencies" in A.C.'s statements but indicated that Defendant would be able to point out those inconsistencies during the trial. On these bases, the trial court found that the statutory requirement of "sufficient indications of reliability" had been met and that the videotape could therefore be shown to the jury.

Defendant challenges the admissibility of the videotape on two grounds. First, he argues that this court held in *Pierce* that fairness required the jury be shown a videotape of the cross-examination of the child at the Child Hearsay Hearing whenever the State is permitted to introduce a videotape of a child's statements to police. Second, he maintains that the trial court abused its discretion in finding indicia of reliability in A.C.'s videotaped statements.

█ It is true that in *Pierce,* we said that a Defendant normally should be allowed to show a videotape of the cross-examination of the child at a Child Hearsay Hearing, at least where the State is permitted to show the jury a videotape statement of the child incriminating the defendant.[3] But here the Child Hearsay Hearing was not videotaped and nothing in the record suggests that Defendant requested the cross-examination to be videotaped or shown to the jury. Because Defendant did not seek to have the cross-examination videotaped or otherwise raise this argument at the hearing or at trial, it is not available to him here.

We defer comment on Defendant's second argument until we review the remainder of the evidence.

**B**

At the Child Hearsay Hearing, A.C.'s mother reported A.C.'s statements to her

---

**3.** "In this case there was no cross-examination of the victim at the hearing. If that cross-examination takes place and a videotape is to be admitted, it is within the trial court's discretion, and we believe the better practice, to permit the cross-examination to be videotaped and shown with the tape of the victim's statements. The basis for admitting the tape of the victim's statements is its reliability as determined by the trial court, not the cross-examination. In this respect, the tape is qualitatively the same as testimony recounting out-of-court statements. Nonetheless use of the tape of the victim smacks of permitting the victim to become a witness, albeit it an electronically reproduced witness.

Although the statute does not explicitly speak to the point, under those circumstances fairness to the defendant would normally require giving the defendant the option to display to the trier of fact a tape of any cross-examination done either during the hearing or during the taping of the statement itself. As with any tape offered at trial, the trial court may order or the parties may agree to editing of objectionable portions of the tape. The points made in this paragraph are in exercise of our supervisory powers and are not derived from constitutional jurisprudence. They are not applicable to proceedings conducted before publication of this opinion." *Pierce,* 677 N.E.2d at 46–46.

on the morning of May 19. The mother testified that on the morning of May 19, 2000, after Defendant had gone to work, A.C. told her that "her moo moo was sore," that "her daddy stuck his fingers in her moo moo and that it hurt real bad," and that "her daddy's moo moo spit on her." The mother testified that "moo moo" was A.C.'s way of describing "her privates."

At the same Child Hearsay Hearing, A.C.'s maternal grandfather testified that "a couple of days" after May 19, 2000, during one of their "weekend walks," A.C. had told him that her "daddy played with her moo moo and it hurt real bad." During the trial, the grandfather testified to additional statements that were not offered during the Child Hearsay Hearing concerning other statements that A.C. made to him during their walks. At trial, but not at the hearing, he testified that "within a week" of May 19, 2000, she had told him that the Defendant had "touched it" and "one time in her bedroom he spread her legs way far and put his head down there," that Defendant "somehow showed himself to her in the bedroom, and told her to touch him," that A.C. told him that "it hurt real bad" when Defendant touched her "moo moo" and that she "wanted him to stop." The grandfather testified at trial that A.C. had asked him to "have" Defendant "stop."

Dr. Merck, the physician who examined A.C., was not a witness at the Child Hearsay Hearing. However, he did testify at trial. Dr. Merck testified that he examined A.C. on May 19, 2000. He said that her external genitalia was somewhat reddened or erythematous. He further testified that his examination neither confirmed nor negated the possibility of molestation.

In reviewing the admissibility of the statement made to A.C.'s mother, the trial court determined that "the mother had no reasons or suspicions and was not in a position of being in a hostile situation with the defendant" at the time the statements were made. In reviewing the admissibility of the statements made to A.C.'s grandfather, the court recognized that the grandfather could not "specifically identify" the dates on which the conversations occurred. The court stated that the grandfather indicated that "the first [conversation between A.C. and her grandfather] was within a few days of what he called the 'incident' and later defined as the Defendant's arrest, and indicated that the second [conversation between the A.C. and her grandfather] was within a week of the incident." However, the court determined that "the time factor did not depreciate from or is not a negative circumstance in terms of considering the statement." The court said that "it could find no other circumstance or motive on the part of the grandfather to distort statements that were in the language used by the child." Finally, the court found that A.C.'s term for genitals and her description of what occurred was "consistent between the various statements." On these bases, the trial court found that there was sufficient indicia of reliability to allow the mother's and grandfather's accounts of A.C.'s statements to be introduced.

Defendant challenges these conclusions, arguing that the indicia of reliability was not sufficient to permit the statements to be presented at trial.

### III

As a general matter, the decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal. *Bacher v. State*, 686 N.E.2d 791, 793 (Ind.1997). We recently went so far as to say that we will not reverse the trial court's decision unless it represents a manifest abuse of discretion that results in the denial of a fair trial.

*Zawacki v. State,* 753 N.E.2d 100, 102 (Ind.Ct.App.2001). An abuse of discretion in this context occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Hardiman v. State,* 726 N.E.2d 1201, 1203 (Ind.2000). At the same time, the protected person statute impinges upon the ordinary evidentiary regime such that we believe a trial court's responsibilities thereunder carry with them what we recently called in another context "a special level of judicial responsibility." *See Cox v. State,* 706 N.E.2d 547, 551 (Ind.1999).

We turn first to the discrete issue of the proper interpretation of A.C.'s use of the term "moo moo." During the hearing, none of the State, Defendant, or trial court questioned the child specifically about the details concerning the meaning of "moo moo," *i.e.,* whether she made the statements to her mother and grandfather about her and her father's "moo moo," when they were made, or what she meant by them. As indicated *supra,* A.C.'s mother explained during the hearing that the word "moo moo" was a word that A.C. had come up with on her own to describe her "privates." A.C.'s grandfather testified during the hearing that A.C. had started to refer to her genitalia as "moo moo" when she had problems with yeast infections. At trial, A.C.'s mother testified that she had no idea why A.C. used the word "moo moo" to describe her genitalia, but that it is what she had always called it. A.C.'s mother further testified that A.C. also called "boys' private areas 'moo moos.'" At trial, A.C.'s grandfather also testified that A.C. had used the term "moo moo" to describe her genitalia. The defendant objected to the admission of the hearsay statements at both the hearing and the subsequent trial, but did not make any contrary arguments as to the proper interpretation of A.C.'s use of the term "moo moo."

In examining the interpretation of A.C.'s use of the term "moo moo," the trial court concluded, "They were close in time to the event, they were in terms that the child apparently uses, although she did not use those terms today, but what she apparently uses, based on the testimony of her mother." We see no abuse of discretion in concluding that, by her use of the term "moo moo," A.C. was referring to her own and to male genitalia.

However, on the broader issue of whether there was sufficient indicia of reliability to present the statements of the mother and grandfather and the videotape to the jury, we are unable to sustain the trial court's ruling. In *Pierce,* we found highly significant that the child's statements were spontaneous and occurred a very short time after the alleged molestation. It is true that A.C. repeated the same or similar statements to her mother, to her grandfather, and on the videotape. But here there is no evidence at all as to when the alleged molestation occurred. That is, while the evidence supports a conclusion that the mother sought both medical attention and the intervention of law enforcement after her conversation with A.C. on May 19, there is absolutely nothing of record to tie the alleged molestation to May 19 or any other date. Indeed by alleging in its charging information that the offense occurred "on or before April 1, 2000 and May 19, 2000," the State effectively concedes there was a period exceeding six weeks during which the alleged molestation could have taken place.

In *Pierce,* we expressed our concern that the videotape interview occurred several hours after the alleged molestation and after the "potentially disorienting physical examination at a doctor's office." *Pierce,* 677 N.E.2d at 45. Our reason for concern was that intervening delay created the potential for an adult to plant a story or cleanse one. *Id.* The same concern

attaches to the videotape interview here, and it appears that A.C.'s statements to her grandfather occurred at least a full day after her statements to her mother and her videotape interview.[4]

Added to these difficulties, we note that during the competency determination at the hearing, A.C. was asked three times in different ways whether she understood the difference between the truth and a lie. A.C. responded that she did not.[5] It was on this basis that the trial court found that she was incompetent to be a witness in the case and unavailable to testify at trial. While it is certainly true that the protected person statute provides that a statement or videotape made by a child incapable of understanding the nature and obligation of an oath is nevertheless admissible if the statute's requirements are met, there is a degree of logical inconsistency in deeming reliable the statements of a person who cannot distinguish truth from falsehood.

■ We find that the testimony recounting A.C.'s statements to her mother and grandfather and her videotape interview failed to exhibit sufficient indications of reliability as the protected person statute requires because of the combination of the following circumstances: there was no indication that A.C.'s statements were made close in time to the alleged molestations, the statements themselves were not sufficiently close in time to each other to prevent implantation or cleansing, and A.C. was unable to distinguish between truth and falsehood.

## IV

However, it is not every error that warrants reversal of judgment of conviction. Only when the error affects the substantial rights of a party or is inconsistent with substantial justice is reversal warranted. Ind. R. Tr. P. 61. Finding that it was error to admit A.C.'s hearsay statements into evidence, we necessarily examine whether there was sufficient evidence to support Defendant's conviction without the improperly admitted evidence.

■ The offense of child molesting is defined in Ind.Code § 35–42–3(a) as the performance or submission of sexual intercourse or deviate sexual conduct with a child under fourteen years of age. Ind. Code § 35–42–4–3(a)(1). The only evidence in support of the element of performance of deviate sexual conduct was the improperly admitted hearsay statements of A.C. to her mother and grandfather and on the videotape, i.e., without A.C.'s hearsay statements, there was a complete failure of evidence on an essential element of the charged offense. We find the admissible evidence submitted at trial insufficient to sustain Defendant's conviction.

## V

Defendant advances several arguments to the effect that the evidence actually presented at trial was insufficient as a matter of law to sustain his conviction. A consequence of such a holding would be that Defendant could not be retried on these charges. *Stahl v. State,* 686 N.E.2d 89, 94 (Ind.1997).

---

4. May 19, 2000, was a Friday and the grandfather testified that his conversation occurred "during a weekend walk."

5. At the child hearsay hearing A.C. was also questioned by the State:

Q Okay, do you know how to tell the truth?
A (Inaudible response.)
Q Say it out loud please.
A No.

After cross examination by the defendant, A.C. was questioned again by the State:
Q Just wrap it up. I want to talk to you a little bit more about telling the truth. Do you know what it means to tell the truth?
A. (Inaudible response.)
Q You have to use a word out loud.
A No.
Q Do you know what it means to tell a lie?
A. No.

First, we wish to make clear that our reversal of Defendant's conviction on grounds of improperly admitted evidence does not bar retrial. *Id.* ("[I]f all the evidence, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charge.")

As to the three claims of insufficient evidence Defendant advances, we believe relatively summary treatment sufficient. As to Defendant's claim that the State did not present sufficient evidence that the charged offense occurred in Indiana, we find that there was evidence of record that the family was living in Indiana when the alleged events complained of occurred. As to Defendant's claim that the State failed to prove that he was over the age of 21 when the charged offense occurred, there was testimony at trial that one witness had known Defendant for "thirty-seven years." As to Defendant's claim that A.C.'s hearsay statements offered at trial via the testimony of her mother, her grandfather, and the videotape were "incredibly dubious," we find the consistency of these statements alone mandates against application of the "incredible dubiosity rule," which is implicated only where a sole witness presents inherently contradictory testimony. *Whedon v. State*, 765 N.E.2d 1276, 1278 (Ind.2002).

*Conclusion*

Having previously granted transfer, we remand for a new trial or other proceeding consistent with this opinion.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.