Paul L. MISHLER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–0712–CR–577.

Court of Appeals of Indiana.

Oct. 23, 2008.

1096

Juan Garcia, Jr., Garcia & Crawford, Elkhart, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

**BAKER, Chief Judge.**

Appellant-defendant Paul L. Mishler appeals his conviction for two counts of Child Molesting,[1] a class A felony, claiming that the trial court erred in admitting the child victim's pretrial statements and videotaped interview into evidence at trial. Mishler also contends that the evidence was insufficient to support the convictions and that the fifty-year aggregate sentence was inappropriate in light of the nature of the offenses and his character. We conclude that the victim's statements and interview were properly admitted into evidence and find that the evidence was sufficient to support the convictions. However, we also conclude that Mishler's sentence is inappropriate. Therefore, we affirm in part, reverse in part, and remand with instructions to revise Mishler's sentence to an aggregate thirty-eight-year term of incarceration.

## *FACTS* [2]

B.P. was born on October 6, 1995, and just before she began attending kindergarten at age five, she was living in Elkhart County with her mother, Angela Passerallo, twenty-nine-year-old Mishler, and a younger half-brother. Mishler, who was engaged to Passerallo, is the father of her son.

Around the time that B.P. was in the second and fourth grades, Mishler entered

---

1. Ind.Code § 35–42–4–3.

2. We heard oral argument on September 29, 2008, at the Indiana University School of Law

in Bloomington. We thank the school's administration, faculty, and students for their hospitality.

her bedroom during the night on two occasions. When the incidents occurred, B.P. was living in different houses and attending different schools.

On the first occasion, which the State alleged occurred "on or between May, 2005 through January, 2006," appellant's app. p. 72, Mishler pulled B.P.'s pants to her knees and "started licking" her "private," tr. p. 75–76. Mishler also touched B.P.'s vagina with his finger in an "up and down" motion. *Id.* at 78–79, 92. Although B.P. pretended to be asleep during the incident, she watched Mishler leave the room. On the second occasion, which allegedly occurred during the same time period, Mishler put "his finger in [B.P.'s] private and licked it." *Id.* at 72.

On January 26, 2006, B.P. informed her school counselor, Victor Burson, about the incidents. That same day, B.P. gave accounts of the touchings to Shannon Simmons from child protective services and forensic interviewer Gayla Konanz. During the videotaped interview, B.P. claimed that "almost every night," Mishler entered her "bedroom and licked her private." Ex. 3. B.P. also told Simmons that "Big Paul" had "touched her boobs over her clothes." Appellant's App. p. 28.

After the interviews, Passerallo took the children to their grandmother's home so she could confront Mishler about the incidents. At some point, the grandmother heard Passerallo ask B.P., "[d]id this really happen or was this a dream?" *Id.* at 48. B.P. responded by becoming withdrawn, which her grandmother described as B.P.'s typical reaction to scolding, accusations against her, humiliation, and antagonizing behavior.

The following day, B.P. returned to Burson's office with a "bland expression." *Id.* at 216–17. Burson asked B.P. "what was going on," and B.P. responded that "she ... thinks it was a dream." *Id.* at 217.

B.P. clarified that she thought "[t]he part about [her] getting licked in [her] private parts" was a dream. *Id.* Burson then permitted B.P. to call Passerallo. Burson overheard B.P. raise her voice and angrily tell Passerallo, "I know what happened." *Id.* at 219. Burson then spoke with Passerallo and she acknowledged that she had suggested to B.P. several times that the alleged incidents might have been a dream.

Thereafter, the State charged Mishler with two counts of class A felony child molesting. Prior to trial, the State filed a "Notice to Defendant of Intent to Introduce Statement/Videotape or Child Witness Statements/Video Tape Pursuant to I.C. 35–37–4–6(f)." Appellant's App. p. 14–15, 74–81. Mishler opposed the motion, claiming that the admission of B.P.'s statements at trial would violate the rule against hearsay evidence. At a pretrial hearing on the State's motion, the State presented testimony from B.P., Burson, Simmons, and Konanz. Thereafter, the trial court granted the State's request to admit B.P.'s statements and the videotaped interview into evidence.

At a jury trial that commenced on September 24, 2007, B.P. testified that Mishler "put his finger in [her] private and licked it." Appellant's App. p. 41. However, on cross-examination, B.P. testified that the alleged incidents "may have been a dream." *Id.* at 42. B.P. further testified that Passerallo talked to her on multiple occasions about the possibility that she had only dreamed about Mishler's actions. At the conclusion of the trial, Mishler was found guilty as charged.

Thereafter, Mishler was sentenced to fifty years of incarceration in the Indiana Department of Correction on each count, to run concurrently. In support of the sentence, the trial court identified the fol-

lowing aggravating circumstances: (1) Mishler's juvenile adjudications for acts that would be child molesting had they been committed by an adult; (2) the failure to obtain sufficient counseling to avoid reoccurences of that behavior; (3) the violation of a position of trust; and (4) Mishler's adult criminal history. The trial court found the absence of prior felony convictions as the sole mitigating factor. Mishler now appeals.

## DISCUSSION AND DECISION

### I. Admission of B.P.'s Statements and Videotaped Interview

#### A. The Protected Person Statute

Mishler first claims that his convictions must be reversed because the trial court erred in admitting the pretrial statements that B.P. made to Burson, Simmons, and Konanz into evidence on the grounds that the statements were inadmissible in accordance with Indiana Code section 35–37–4–6, the Protected Person Statute, and that the admission of those statements violated his right to confront witnesses testifying against him. For those same reasons, Mishler contends that the trial court erred in admitting the videotape of B.P.'s interview with Konanz into evidence.

■ As with challenges to the admissibility of other evidence, we initially observe that the decision to admit statements under the Protected Person Statute will not be reversed absent a showing of a manifest abuse of discretion by the trial court resulting in the denial of a fair trial. *M.T. v. State,* 787 N.E.2d 509, 511 (Ind.Ct. App.2003). An abuse of discretion occurs only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Myers v. State,* 718 N.E.2d 783, 789 (Ind.Ct.App.1999).

The Protected Person Statute provides as follows:

(c) As used in this section, "protected person" means:

(1) a child who is less than fourteen (14) years of age;

. . .

(d) A statement or videotape that:

(1) is made by a person who at the time of trial is a protected person;

(2) concerns an act that is a material element of an offense listed in subsection (a) or (b) that was allegedly committed against the person; and

(3) is not otherwise admissible in evidence;

is admissible in evidence in a criminal action for an offense listed in subsection (a) or (b) if the requirements of subsection (e) are met.

(e) A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:

(1) The court finds, in a hearing:

(A) conducted outside the presence of the jury; and

(B) attended by the protected person; that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

(A) testifies at the trial; or

(B) is found by the court to be unavailable as a witness for one (1) of the following reasons:

(i) From the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's

testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate.

(ii) The protected person cannot participate in the trial for medical reasons.

(iii) The court has determined that the protected person is incapable of understanding the nature and obligation of an oath.

(f) If a protected person is unavailable to testify at the trial for a reason listed in subsection (e)(2)(B), a statement or videotape may be admitted in evidence under this section only if the protected person was available for cross-examination:

(1) at the hearing described in subsection (e)(1); or

(2) when the statement or videotape was made.

I.C. § 35–37–4–6.

■■■ In construing this statute, our Supreme Court has observed that hearsay evidence may be admitted in the case of children and others found incompetent to testify at the trial of persons who are accused of certain crimes against them. *Carpenter v. State,* 786 N.E.2d 696, 703 (Ind.2003). More specifically, a statement or videotape that is made by a "protected person" that concerns an act constituting a material element of a charged offense is admissible if the trial court finds that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability and the protected person either testifies at trial or is unavailable. *M.T.,* 787 N.E.2d at 512. Considerations in determining reliability include: (1) the time and circumstances of the statement, considering whether there was significant opportunity for coaching; (2)

the nature of the questioning; (3) whether there was a motive to fabricate; (4) use of age-appropriate terminology; and (5) spontaneity and repetition. *Id.*

■■■ In light of the above, Mishler asserts that B.P.'s statements to Burson, Simmons, and Konanz and the videotaped interview with Konanz should have been excluded from the evidence at trial because the testimonial evidence at the Protected Person Statute hearing established that more than one month had elapsed between the time of the last alleged occurrence of molestation in December 2005 and B.P.'s statement to Burson on January 26, 2006. Moreover, Mishler notes that there was a seven-month period during which he could have committed the alleged acts of molestation because the State's charging informations stated that the acts were committed between May 2005 and January 2006. As a result, Mishler maintains that B.P.'s statements to Burson were not spontaneous because they were not made within a short time after the last alleged occurrence of molestation.

Notwithstanding these contentions, the record demonstrates that all of B.P.'s challenged statements were made within a few hours after the allegations came to light and were made only about a month after the most recent acts. We note that even though some time passed between the touchings and the statements, this is just one factor to be considered and is not necessarily dispositive. *Trujillo v. State,* 806 N.E.2d 317, 328 (Ind.Ct.App.2004). Moreover, B.P. made the statements to trained professionals and nothing in the record suggests that any of the interviewers used leading questions. Indeed, B.P. initiated the statements when she arrived at Burson's office and spontaneously provided details of the incidents to him. Moreover, the record demonstrates that

B.P. used age-appropriate terms in each of the statements such as "private," "private parts," and "where she uses the bathroom." Tr. p. 104, 122, 126.

We further note that nothing in the record suggests that B.P.'s earlier statements were the product of coaching or that she had any motive to fabricate the allegations against Mishler. In our view, the record supports the strong inference that B.P.'s later expression of uncertainty to Burson and her testimony at trial were the result of Passerallo's questions to her about whether the incidents "really happened" and the implication that the incidents were only a dream. Tr. p. 48. Moreover, B.P. telephoned her mother, became angry, and stated "I know what happened." *Id.* at 217–19. As noted above, Passerallo informed Burson later that day of her "suggestions" to B.P. that she may have been dreaming. *Id.* at 219. B.P. testified at trial that Passerallo had talked with her on multiple occasions about the incidents, and Passerallo acknowledged that she did not believe B.P.'s accusations. *Id.* at 199.

In evaluating this evidence, we turn to *Surber v. State*, 884 N.E.2d 856, 862–63 (Ind.Ct.App.2008), *trans. denied,* where this court determined that the child victim's statements were reliable and admissible under the Protected Persons Statute:

It was unclear exactly when the molestations occurred, but all of C.S.'s statements were made relatively close in time to each other. C.S.'s statements to Douglas were spontaneous, and some of her statements to Nurse Renz were spontaneous. C.S. used age-appropriate terminology and had no motive to fabricate. Moreover, the trial court found that C.S. was able to distinguish between truth and falsehood, and C.S. was five years old at the time she made the statements. Surber contends that

"there was a certain amount of leading in the questions" asked by McClain, Callen, and Renz, and that there was opportunity for coaching.... Surber does not identify the alleged leading questioning, and our review of the record does not reveal suggestive questioning or an indication of coaching. We conclude that the trial court did not abuse its discretion by concluding that the time, content, and circumstances of the statements and videotape provided sufficient indications of reliability.

In light of this discussion, it is apparent that the circumstances in this case supporting the trial court's finding of reliability were even stronger than those that were present in *Surber.* Notwithstanding our determination in *Surber,* Mishler directs us to *Carpenter,* where our Supreme Court found that the child hearsay statements were not sufficiently reliable because "there was no indication that [the three-year-old victim's] statements were made close in time to the alleged molestations, the statements themselves were not sufficiently close in time to each other to prevent implantation or cleansing, and [the victim] was unable to distinguish between truth and falsehood." 786 N.E.2d at 704. The holding in *Carpenter* is readily distinguishable from the circumstances here because B.P.'s prior statements were made relatively close in time to each other and B.P. was able to distinguish between truth and falsehood. Tr. p. 66, 79–80, 112–13, 123, 161. Finally, the record in this case shows that the remaining indicia of reliability regarding B.P.'s statements had been established. As a result, we conclude that B.P.'s statements and videotaped interview were properly admitted under the Protected Person Statute.

*B. Right to Confront Witnesses*

█ In a related argument, Mishler claims that the statements and B.P.'s

videotaped interview should not have been admitted because his right to confront witnesses against him as construed in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), was violated. In *Crawford*, the United States Supreme Court determined that "where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68–69, 124 S.Ct. at 1374. Therefore, Mishler maintains that when the State is presenting testimonial evidence against a defendant—such as the statements that B.P. made to the witnesses and the videotaped interview—the *Crawford* requirements are only satisfied when the defendant has had the prior opportunity to cross-examine the alleged victim declarant. As a result, Mishler claims that because he was not afforded the opportunity to cross-examine B.P. *before* she made statements to the witnesses and gave the videotaped interview, the admission of that evidence was error.

■ The Confrontation Clause set forth in the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In construing this provision, the holding in *Crawford* prohibits the admission in a criminal trial of testimonial statements by a person who is absent from trial unless the person is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 68–69, 124 S.Ct. 1354; *see also Purvis v. State*, 829 N.E.2d 572, 578 (Ind. Ct.App.2005). Moreover, as long as the declarant testifies, a defendant's right to confront witnesses against him is not violated even if the declarant is unable to recall the events in question. *United*

*States v. Owens*, 484 U.S. 554, 558, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). Finally, we note that "the feigned or real absence of memory is itself a factor for the trier of fact to establish, but does not render the witness unavailable." *Fowler v. State*, 829 N.E.2d 459, 466 (Ind.2005).

In this case, B.P. testified at the Protected Person hearing, at Mishler's trial, and was available for cross-examination. Thus, because *Crawford* only applies to a non-testifying witness's out-of-court testimonial statement, Mishler has failed to show how he was denied the right of confrontation under the rule announced in *Crawford*. *See Proctor v. State*, 874 N.E.2d 1000, 1002 (Ind.Ct.App.2007) (holding that the trial court did not violate the *Crawford* holding in admitting a witness's taped statement when the witness testified at trial and was subject to cross-examination). As a result, Mishler's contention fails.

### II. Sufficiency of the Evidence

■ Mishler next claims that even if B.P.'s pretrial statements and videotaped interview were properly admitted at trial, the evidence was insufficient to support his convictions. Specifically, Mishler maintains that his convictions must be set aside because B.P.'s testimony was equivocal and contradictory and no forensic evidence was offered to prove that B.P. was a victim of child molesting.

■ When reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). Moreover, we respect the jury's exclusive province to weigh conflicting evidence. *Id.* And the jury is free to believe or disbelieve witnesses as it sees fit. *McClendon v. State*, 671 N.E.2d 486, 488 (Ind.Ct.App.1996). We will affirm if the probative evidence and reasonable inferences drawn there-

from could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry*, 820 N.E.2d at 126. Finally, the uncorroborated testimony of one witness is sufficient to sustain a conviction. *Carter v. State*, 754 N.E.2d 877, 880 (Ind.2001).

In this case, B.P. testified at trial that Mishler entered her bedroom during the night on two occasions. Tr. p. 34–35, 72, 74, 84, 125–26. The first time, Mishler pulled B.P.'s pants down to her knees and "started licking" her "private." *Id.* at 75–76. Mishler also touched B.P.'s vagina with his finger in an "up and down" motion. *Id.* at 78–79, 92. B.P. testified that she pretended to be asleep during the incident and identified Mishler as the perpetrator.

With regard to the second occasion, B.P. testified that Mishler "put his finger in [her] private and licked it." *Id.* at 72, 77–78. B.P. again saw Mishler "walk out" after completing the act. *Id.* at 78. Although the State acknowledges that B.P. also testified at trial that she did not know whether she dreamed about the incidents, the evidence demonstrated that B.P. was initially certain of what had occurred when she gave her original statement to Burson, Simmons, and Konanz. *Id.* at 118, 140, 168. And it was not until Passerallo talked to B.P. that there was a doubt in B.P.'s mind.

We also note that after Passerallo made this suggestion, B.P.'s grandmother observed that B.P. became withdrawn and noticed that this reaction was typical when B.P. was scolded and humiliated. *Id.* at 49–50. As a result, B.P. told Burson the next day that she thought that she had dreamed the touchings. *Id.* at 217. However, the record also demonstrates that immediately after B.P. made that statement, she telephoned Passerallo, raised her voice, and angrily told Passerallo, "I know what happened." *Id.* at 219. Pas-

serallo also acknowledged to Burson that she had suggested to B.P. that Mishler's alleged actions may only have been a dream, and she admitted that she did not believe B.P.'s accusations. *Id.* at 199, 219. B.P. testified that Passerallo talked to her on multiple occasions prior to trial about the possibility that the touchings were a dream. *Id.* at 89.

In light of these circumstances, the jury could properly infer that B.P.'s initial accounts of the incidents and her recollection at trial were accurate, and it was Passerallo who placed doubt in B.P.'s mind about what had actually occurred. In essence, Mishler's challenges to the sufficiency of the evidence amount to a request for us to reweigh the evidence, which we will not do. *McHenry*, 820 N.E.2d at 126. As a result, we conclude that the evidence was sufficient to support Mishler's convictions.

### III. Sentencing

Finally, Mishler argues that he was improperly sentenced. Specifically, Mishler claims that the fifty-year aggregate sentence was inappropriate when considering the nature of the offenses and his character.

We initially observe that sentencing decisions are within the trial court's discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *reh'g granted on other grounds*, 875 N.E.2d 218 (Ind.2007). As long as the sentence imposed is within the statutory range, the trial court's sentencing determination will be reversed only for an abuse of discretion. 868 N.E.2d at 490. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

However, this court has the constitutional authority to revise an otherwise proper sentence where, after due

consideration of the trial court's sentencing determination, we find that the sentence imposed is inappropriate in light of the nature of the offense and the defendant's character. Ind. Appellate Rule 7(B). The defendant carries the burden to convince us that the sentence imposed is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006).

The sentencing range for a class A felony is twenty to fifty years imprisonment, with an advisory sentence of thirty years. Ind.Code § 35-50-2-4. The advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Weiss v. State*, 848 N.E.2d 1070, 1072 (Ind.2006). Finally, our Supreme Court has determined that maximum sentences should generally be reserved for the worst offenses and offenders. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind.2007).

As noted above, the trial court sentenced Mishler to the maximum fifty-year term of incarceration on each class A felony child molesting count. Although the trial court ordered the sentences to run concurrently, Mishler maintains that the sentence was not warranted because of his "positive character traits" that included his "limited" criminal record, supportive family, and educational achievements. Appellant's Br. p. 33–35.

In considering the nature of the offenses, Mishler committed at least two episodes of molestation against B.P. that involved multiple sexual acts. Tr. p. 91–92. B.P. was in the second grade when the first instance occurred, and she was living with Mishler, who was a father figure to her. *Id.* at 10. As for Mishler's character, we note that his criminal record as an adult is limited to one misdemeanor conviction for possession of marijuana in 1997 and a probation violation on that offense. Appellant's App. p. 61. It was also established that Mishler had a juvenile adjudication in 1991 for three acts that would be child molestation if they had been committed by an adult. *Id.* Mishler also underwent counseling on two separate occasions. Sent. Tr. p. 8.

Although the acts that Mishler committed against B.P. were monstrous, we cannot say that, standing alone, they "demonstrate a character of such recalcitrance or depravity that [it] justif[ies] a [maximum sentence]." *Hollin v. State*, 877 N.E.2d 462, 465–66 (Ind.2007). Similarly, even though the record demonstrates that Mishler is far from an example of a law-abiding citizen, we do not find that his character supports the aggregate fifty-year sentence that was imposed. In fact, counsel for the State conceded at oral argument that Mishler can probably not be considered among the worst offenders in light of his limited criminal history and the amount of time that has passed since the juvenile adjudications.

We do not intend to diminish the gravity of the incidents that Mishler committed against B.P., but we cannot categorize these offenses as the worst of their type. Although the record supports an enhanced sentence in light of the aggravating circumstances that the trial court identified, we cannot say that a fifty-year aggregate sentence is warranted in these circumstances. Therefore, we find Mishler's sentence inappropriate, and remand this cause to the trial court to revise Mishler's sentence to thirty-eight years on each count of class A felony child molesting, to be served concurrently.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and MATHIAS, J., concur.