## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 23 2018, 10:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Teresa M. Meyers
Osceola, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony L. Gilliam, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 23, 2018 <br><br> Court of Appeals Case No. 20A05-1706-CR-1347 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Teresa L. Cataldo, Judge <br><br> Trial Court Cause No. 20D03-1508-F1-4 |

**Bailey, Judge.**

# Case Summary

Anthony Gilliam ("Gilliam") appeals his convictions of two counts of child molesting, as Level 1 felonies.[1]

We affirm.

# Issues

Gilliam raises two issues on appeal, namely:

I.    Whether the trial court abused its discretion when it admitted into evidence the video recording of the child-victim's forensic interview.

II.   Whether the State presented sufficient evidence to sustain Gilliam's two Level 1 felony convictions of child molesting.

# Facts and Procedural History

In early 2015, Keisha Shorter ("Shorter") and her several children, including then-nine-year-old M.S., lived in a two-story home on Aspenwald Street in Elkhart. Several adult males, including Gilliam, also lived in the home. Gilliam was a long-time friend of Shorter. M.S. referred to Gilliam as "Tony." Tr. Vol. III at 104.

---

[1] Ind. Code § 35-42-4-3(a)(1); I.C. § 35-31.5-2-221.5(2).

[5] Gilliam moved into Shorter's home in early February of 2015, and remained there for a few months until Shorter demanded that Gilliam leave the home after learning from her daughters M.S. and E.L. of incidents of Gilliam inappropriately touching M.S. Shorter contacted her case worker and the police to notify them of the incidents. On May 1, 2015, shortly after the incidents, M.S. and E.L. both participated in separate forensic interviews concerning the incidents involving M.S. and Gilliam. Shorter then spoke with Lieutenant James Anderson ("Lt. Anderson") of the Elkhart police regarding the incidents. The police investigation included locating a photograph of Gilliam from the Bureau of Motor Vehicles, which Shorter identified.

[6] On August 4, 2015, the State charged Gilliam with two counts of Level 1 felony child molesting, each alleging that Gilliam performed or submitted to sexual intercourse or other sexual conduct with M.S. The State subsequently amended the information, on both counts, to allege only that Gilliam performed or submitted to other sexual conduct with M.S., deleting the sexual intercourse allegation. In a pre-trial conference held on April 27, 2017, the State informed the court and defense counsel that the State may need to conduct a protected person hearing during trial, as M.S. was still under the age of fourteen. Defense counsel did not raise an objection at that time.

[7] Gilliam's jury trial began on May 8, 2017. During the presentation of the State's case-in-chief, M.S.—who was eleven years old at the time—testified reluctantly. She testified that "something happened" with Tony when he came into her bedroom and laid down "right next to" her. Tr. Vol. III at 105-108.

She testified that "a grown-up boy" who lived with her on Aspenwald Street touched her "on a part that [sic] nobody should touch a girl." *Id.* at 121-22. She testified that she did not "want to tell" who touched her. *Id.* However, she testified that, when she was in the boys' bedroom with no one other than Gilliam, a "grown-up boy" touched her "in a part that [sic] girls shouldn't be touched." *Id.* at 125. M.S. said she did not remember how she and Gilliam got from her bedroom to the boys' bedroom that night.

[8] M.S. testified that, soon after the incidents, she told her mother and sister, E.L., about it, but that she did not remember what she told them. She stated that her mother "kick[ed]" Gilliam out of the house after M.S. told her mother about the incidents. *Id.* at 114. M.S. testified that she also remembered discussing the incidents soon thereafter with a "grown-up girl" in a room "with a couch and some chairs," but she stated that she did not remember what they talked about. *Id.* at 117-18. M.S. testified that she would have remembered the incident better closer to the time when it happened, i.e., approximately two years prior to the trial. Gilliam then had the opportunity to, and briefly did, cross-examine M.S.

[9] Following M.S.'s testimony, the parties discussed the video from the forensic interview of M.S., and the State requested a protected person hearing, pursuant to the Protected Person Statute ("PPS"), Indiana Code Section 35-37-4-6. The trial court, outside the presence of the jury, held a PPS hearing over Gilliam's objections, and heard testimony from M.S. and Julie Reed ("Reed"), the forensic interviewer who interviewed M.S. about the incidents with Gilliam. At

the PPS hearing, M.S. testified under oath that she agreed to be truthful and that she understood what it meant to be truthful. She testified that she talked to a "grown-up lady" in a room with a blue couch about "what happened with Tony." *Id*. at 136. She testified that she was "correct and truthful" when she went to the Child Advocacy Center[2] and spoke with the lady there. *Id*. She also testified that it was "easier to remember things" during the interview, which was closer in time to the incidents with Gilliam, than at trial two years later. *Id*. And M.S. testified that there were some things she did not remember now that she might have told the lady in the interview. *Id*. at 137.

[10] Gilliam was given the opportunity to cross-examine M.S. at the PPS hearing but declined to do so. However, defense counsel argued that the video of the interview was inadmissible under the PPS, Indiana Rule of Evidence 403, and the rule against hearsay. The State argued the video was admissible under the PPS and as a recorded recollection exception to the hearsay rule. The trial court found that the video was admissible under the PPS and that its probative value outweighed any prejudice to Gilliam. The court offered Gilliam the opportunity to have a transcript of the PPS hearing admitted into evidence, pursuant to the statute, but Gilliam declined. Reed then testified before the jury, over defense objections, regarding her forensic interview with M.S. on May 1, 2015, and the trial court admitted the video of the forensic interview

---

[2] That center is located in the "CAPS"—defined by Reed as "Child and Parent Services"—building in Elkhart. *Id*. at 182, 185-86, 224. Therefore, throughout the trial, the parties and witnesses state that M.S.'s forensic interview took place "at CAPS." *See, e.g.*, *id*. at 136.

into evidence. State's Ex. 1. The video was then played for the jury, following the trial court's admonishment to the jury concerning the video.

[11] On May 10, the jury found Gilliam guilty on both of the amended counts of child molesting. On May 25, the trial court sentenced Gilliam to concurrent terms of thirty-five years' imprisonment, with five years of each sentence suspended to probation. Gilliam now appeals his convictions.

# Discussion and Decision

## Admissibility of Recording of Forensic Interview of M.S.

### *Standard of Review*

[12] Gilliam contends that the trial court erred in admitting M.S.'s video-recorded interview into evidence when M.S. also provided live testimony at trial.

> We review a trial court's evidentiary rulings for an abuse of discretion. *McHenry v. State*, 820 N.E.2d 124, 128 (Ind. 2005). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if it misinterprets the law. *Carpenter v. State*, 786 N.E.2d 696, 703 (Ind. 2003). Our supreme court also has observed that the Protected Person Statute ("PPS"), under which the trial court here admitted the videotape, "impinges upon the ordinary evidentiary regime such that we believe a trial court's responsibilities thereunder carry with them ... a special level of judicial responsibility." *Id*.

*Cox v. State*, 937 N.E.2d 874, 876 (Ind. Ct. App. 2010) (internal quotation and citation omitted), *trans. denied*.

## Hearsay Exceptions

[13]     The PPS states, in relevant part:

>    (d) A statement or videotape that:
>
>    (1) is made by a person who at the time of trial is a protected person;
>
>    (2) concerns an act that is a material element of an offense listed in subsection (a) or (b) that was allegedly committed against the person; and
>
>    (3) is not otherwise admissible in evidence;
>
>    is admissible in evidence in a criminal action for [certain enumerated offenses, including child molesting] if the requirements of subsection (e) are met.
>
>    (e) A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:
>
>    (1) The court finds, in a hearing:
>
>    (A) conducted outside the presence of the jury; and
>
>    (B) attended by the protected person;
>
>    that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

(A) testifies at the trial; or

(B) is found by the court to be unavailable as a witness for one (1) of the following reasons:

(i) From the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate.

(ii) The protected person cannot participate in the trial for medical reasons.

(iii) The court has determined that the protected person is incapable of understanding the nature and obligation of an oath.

(f) If a protected person is unavailable to testify at the trial for a reason listed in subsection (e)(2)(B), a statement or videotape may be admitted in evidence under this section only if the protected person was available for cross-examination:

(1) at the hearing described in subsection (e)(1); or

(2) when the statement or videotape was made.

I.C. § 35-37-4-6. Thus, the PPS provides an exception to the rule against hearsay by allowing, under the statutorily-specified conditions, the admission into evidence of an out-of-court statement for the truth of the matter stated.

[14] Since M.S. was a child younger than age fourteen—both at the time of the crime and at the time of trial—she is a "protected person" under the statute. I.C. § 35-37-4-6(c)(1). And the crime of child molesting is listed as an offense covered by the statute. I.C. § 35-37-4-6(a)(1); I.C. § 35-42-4-3. Therefore, the PPS is applicable to this case.[3]

[15] However, Gilliam maintains that the video recording of M.S.'s interview was not admissible under the PPS because our Supreme Court has interpreted the statute as inapplicable when the protected person testifies live at trial.[4] In support, he cites *Tyler v. State*, 903 N.E.2d 463 (Ind. 2009), where our Supreme Court acknowledged that the PPS

> on its face provides that prior videotaped testimony may be admitted even if the protected person testifies at the trial. Specifically, the statute provides that a protected person's statement or videotape is admissible if that person testifies at trial as long as the court finds that the statement provides "sufficient

---

[3] Gilliam does not contend that he was not given proper notice under the statute, that the court failed to give the proper jury instruction required by the statute, or that the PPS hearing failed to follow statutorily-required procedures. *Id.*

[4] Gilliam does not challenge the trial court's finding that the video-recording of M.S.'s interview provides sufficient indications of reliability pursuant to the PPS.

indications of reliability" and the defendant is given notice. I.C. § 35–37–4–6(e).

*Id*. at 467. Nevertheless, the supreme court "exercise[d] its supervisory powers" to hold that, if both the recorded and the live testimonies are consistent and otherwise admissible,

> testimony of a protected person may be presented in open court or by prerecorded statement through the PPS, but not both except as authorized under the Rules of Evidence. If the person is able to testify live without serious emotional distress such that the protected person cannot reasonably communicate, that is clearly preferable.

*Id*. The court noted that "consistent" testimony is cumulative and, therefore, has the potential to cause unfair prejudice. *Id*.

[16] Here, M.S.'s recorded and live testimonies are not "consistent" within the meaning of *Tyler* because they are not cumulative. M.S.'s video-taped testimony provided key additional information that was missing from her live testimony; i.e., testimony that Gilliam committed "other sexual conduct" by "penetration of the sex organ … of a person by an object." I.C. § 35-42-4-3(a)(1); I.C. § 35-31.5-2-221.5(2). *See A.R.M. v. State*, 968 N.E.2d 820, 826 (Ind. Ct. App. 2012) (video-taped interview regarding alleged child molestation admissible under PPS where child-victim also testified live at trial but could not recall the incident); *cf. Cox*, 937 N.E.2d at 876 (video of interview not made under oath found not admissible under PPS where child testified at trial only that he understood the difference between truth and a lie; thus, there was no

sworn statement regarding the truth of the video, which was the only evidence regarding the crime).

[17] Moreover, even if the video-taped interview was inadmissible under the PPS as interpreted by *Tyler*, it was nevertheless admissible under Indiana Rule of Evidence 803(5) as a recorded recollection. *Tyler*, 903 N.E.2d at 467 (noting prerecorded statements inadmissible through PPS may nevertheless be admissible under Rules of Evidence). A record that:

> (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and
>
> (C) accurately reflects the witness's knowledge

is a recorded recollection not excluded by the rule against hearsay. Ind. Evidence Rule 803(5). However, in order for such a record to be admissible under that hearsay exception, "the witness must be able to 'vouch for the accuracy of the prior [statement].'" *Kubsch v. State*, 866 N.E.2d 726, 734 (Ind. 2007) (quoting *Gee v. State*, 389 N.E.2d 303, 309 (Ind. 1979)); *see also Williams v. State*, 698 N.E.2d 848, 850 n.4 (Ind. Ct. App. 1998) (noting that, "before a statement can be admitted under the recorded recollection hearsay exception, certain foundational requirements must be met, including some acknowledgment that the statement was accurate when it was made"), *trans. denied*.

[18] Here, M.S. testified under oath that she knew about the incidents involving Gilliam touching her "in a part that [sic] girls shouldn't be touched," Tr. Vol. III at 125, and that she truthfully told the forensic interviewer about it soon after the incidents. She also testified that she remembered the incidents better at the time of the recorded interview than at the time of trial. And she testified that there were some things she did not remember at the time of trial that she may have told Reed at the interview. That is a sufficient foundation to admit M.S.'s recorded interview under the recorded recollection exception to the hearsay requirement. *See Williams*, 698 N.E.2d at 850-51 & n.4 (noting child's videotaped interview was admissible into evidence under recorded recollection exception to hearsay rule).

### *Right to Confront Witness*

[19] Gilliam also maintains that the admission of the video of M.S.'s forensic interview violated his "constitutional right to confrontation."[5] Appellant's Br. at 4. Both the federal and state constitutions provide for the right of a criminal defendant to be confronted with the witnesses against him. U.S. Const., amend. VI; Ind. Const. art. 1, § 13. Thus, "[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). However, "when

---

[5] Gilliam does not state whether he raises his confrontation claim under the federal constitution or the state constitution.

the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id*. at 59 n.9.

[20] Here, M.S. testified at trial and was subject to cross-examination by Gilliam. M.S. also testified and was available for cross-examination during the in-trial PPS hearing, although Gilliam declined to exercise his right to cross-examine at that time. Thus, Gilliam was provided the opportunity to confront M.S. And, contrary to Gilliam's assertions, the confrontation clause does not require an opportunity to cross-examine at the time of the prior testimonial statement— here, the forensic interview—where the declarant testified at the PPS hearing or trial and the defendant had the opportunity to cross-examine the declarant. *Perryman v. State*, 80 N.E.3d 234, 245 (Ind. Ct. App. 2017); *see also Mishler v. State*, 894 N.E.2d 1095, 1102 (Ind. Ct. App. 2008) ("[A]s long as the declarant testifies, a defendant's right to confront witnesses against him is not violated even if the declarant is unable to recall the events in question."). This is true whether the prior testimony is admitted under the PPS, *Perryman*, 80 N.E.2d at 245, or under the recorded recollection exception to the hearsay rule, *Williams*, 698 N.E.2d at 851.

[21] The trial court did not abuse its discretion by admitting M.S.'s video-recorded forensic interview into evidence.

# Sufficiency of the Evidence

[22] Gilliam challenges the sufficiency of the evidence to support his convictions. Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*. Moreover, "[a] conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

[23] To support Gilliam's convictions of child molesting, as Level 1 felonies, the State was required to prove that Gilliam was over twenty-one years of age and, with a child under age fourteen, knowingly or intentionally engaged in "other sexual conduct" by committing "an act involving … the penetration of the sex organ or anus of a person by an object." I.C. § 35-42-4-3(a)(1); I.C. § 35-31.5-2-221.5(2). The penetration element may be proven by evidence of any penetration of the female sex organ, including external genitalia, and proof of penetration of the vagina is not required. *See, e.g.*, *Morales v. State*, 19 N.E.3d

292, 298 (Ind. Ct. App. 2014), *trans. denied*. "To sustain a conviction for child molesting …, proof of the 'slightest penetration' of the female sex organ … is sufficient," and penetration may be "inferred from circumstantial evidence." *Mastin v. State*, 966 N.E.2d 197, 202 (Ind. Ct. App. 2012) (quoting *Dinger v. State*, 540 N.E.2d 587, 590 (Ind. 1990)), *trans. denied*. Moreover, a finger is "an object" within the meaning of Indiana Code Section 35-31.5-2-221.5(2). *See Gasper v. State*, 833 N.E.2d 1036, 1044 (Ind. Ct. App. 2005) (citing *Stewart v. State*, 555 N.E.2d 121, 126 (Ind. 1990)), *trans. denied*.

[24] Here, it is undisputed that, at the time of the incidents, Gilliam was over age twenty-one and M.S. was under age fourteen. Furthermore, M.S. testified at trial that, when she was in the boys' bedroom with no one other than Gilliam, a "grown-up boy" touched her "in a part that [sic] girls shouldn't be touched." *Id*. at 125. And she stated in the forensic interview that, while she was living on Aspenwald Street, "Tony" twice in the same day put his hand in her pants and inside her underwear, touched her "inside the crack," and moved his fingers. State's Ex. 1 at 16:59 - 17:08 and 24:25 - 24:32. M.S.'s pre-recorded statement and live testimony at trial were sufficient evidence to sustain Gilliam's convictions. *See Amphonephong v. State*, 32 N.E.3d 825, 832 (Ind. Ct. App. 2015) (quoting *Carter v. State*, 754 N.E.2d 877, 880 (Ind. 2001)) ("'[a] molested child's uncorroborated testimony is sufficient to sustain a conviction.'"); *Stetler v. State*, 972 N.E.2d 404, 407 (Ind. Ct. App. 2012) (noting that a child witness does not have to give a "detailed anatomical description of penetration;" it is

sufficient if the victim's "limited sexual vocabulary" described the act of penetration), *trans. denied*.

# Conclusion

The trial court did not abuse its discretion when it admitted M.S.'s video-recorded forensic interview into evidence, as it was admissible both under the PPS and as a recorded recollection exception to the hearsay rule. And the State provided sufficient evidence to support Gilliam's convictions of child molesting.

Affirmed.

Kirsch, J., and Pyle, J., concur.