**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



Oct 24 2012, 8:49 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN C. BOHDAN**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOSHUA C. JOHNSON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 02A03-1203-CR-130 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Judge
Cause No. 02D06-1109-FA-57

**October 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

A jury convicted Joshua Johnson of five counts of child molesting, three as Class A felonies and two as Class C felonies; one count of child exploitation, a Class C felony; and one count of possession of child pornography and two counts of dissemination of matter harmful to minors, all Class D felonies. Johnson was sentenced to an aggregate of fifty-eight and one-half years in prison. Johnson appeals, raising two issues for our review, which we expand and restate as four: 1) whether the trial court abused its discretion by allowing Nurse Robison to testify as to what A.H. told her during a sexual assault examination; 2) whether the trial court abused its discretion by allowing Nurse Robison to state the statistical likelihood of a young victim exhibiting no physical injuries after being sexually assaulted; 3) whether the trial court abused its discretion by deeming as inadmissible proffered testimony concerning Johnson's wife's prior viewing of child pornography; and 4) whether Johnson's sentence is inappropriate in light of the nature of his offenses and his character. Concluding the trial court did not abuse its discretion regarding the challenged evidentiary decisions, and Johnson's sentence is not inappropriate, we affirm.

## Facts and Procedural History

Johnson was married to Lela Johnson, with one daughter of the marriage and one daughter, A.H., of Lela's from a different relationship. In August 2011, Lela began a new job that required her to work from 3:30 p.m. to 12:30 a.m. While Johnson and Lela were both working, Johnson's cousin, Jennifer Boisvert, would babysit the two girls. On August 25, 2011, Johnson picked up the girls around 10:30 p.m. from his cousin's home and took them back to their apartment. On August 26, 2011, Johnson was spending time

with Shawn Boisvert, his second cousin, playing video games.  Johnson and Shawn recorded the video games to an SD card from Johnson's cell phone to later upload to the Internet.  After they finished, they inserted the SD card into Johnson's computer.  A video began to play, and Shawn saw A.H. masturbating an erect penis.  He recognized the room A.H. was in as Johnson's living room.  He also noted the date stamp on the video was August 25, 2011, at 11:30 p.m.  While testifying, Shawn stated he knew the penis to be Johnson's because, even though Johnson's face was not on the video, Johnson had previously shown Shawn videos on his phone of Johnson and Lela having sex.  Shawn was sixteen years old at the time.  After approximately fifteen to twenty seconds, Johnson shut off the video, and the two did not discuss it.

Shawn reported what he had seen to the Department of Child Services ("DCS").  When interviewed by Luna Dejesus of DCS, A.H. told Dejesus that Johnson sexually abused her.  After the interview, A.H. saw Nurse Sharon Robison for a sexual assault examination.  Nurse Robison testified about the examination at trial.  Prior to such testimony, she stated she received a health care technician degree and a nursing degree; she worked for the Fort Wayne Sexual Assault Treatment Center for the twelve years preceding trial; at the time of trial she was the Chief Administrative Officer for the Center and a sexual assault nurse; for the first eight years that she worked at the Center she was primarily a pediatric assistant and would attend all forensic exams of children with the sexual assault nurses; in 2008, she attended a seventy-two hour adult and adolescent sexual abuse examination training course, a forty-two and one half hour classroom course for pediatric sexual abuse, and a fifty-hour clinical course; she participated in a preceptorship with the Chief Nursing Officer at the Center for six

months; and she is certified by the International Association of Forensic Nurses to conduct sexual assault examinations on adults, adolescents, and children. Nurse Robison stated she participated in over eight-hundred sexual assault examinations as a pediatric assistant, and four-hundred and fifty-two as the primary nurse.

Nurse Robison testified that her first step during a sexual assault examination is to take a "patient history," wherein she finds out "what's been going on" in order to diagnose the patient and develop a treatment plan. Transcript at 233. In addition to diagnosing and developing a treatment plan for physical symptoms of abuse, Nurse Robison stated it is important to discover if the patient is at risk for a post traumatic response, and that if the patient is, she refers them for counseling. In regards to A.H.'s examination, Nurse Robison testified:

> What she had stated to me was, she said him, and I clarified who him was, and she said Josh. So she said him's [sic] pee pee, it hurted. He hurted my gina last night. She said that him's [sic] mouth was on my boobs, he put him's [sic] mouth on my mouth and she actually pointed to her mouth. Him [sic] put his mouth on my poop hole and she stated him's [sic] put his pee pee in my mouth, I drank his milk out of his peanuts, it tasted nasty. She also stated that him's [sic] put his pee pee in my butt, I cried, it hurted. She said he showed me naked video and he had me do this to his pee pee, and she actually cupped her hand and went like this.

Id. at 236. In addition to this testimony, the State offered into evidence the medical report filled out by Nurse Robison during her examination. Johnson objected to the admissibility of both Nurse Robison's testimony and the report as including hearsay: statements of A.H. made to Nurse Robison. The trial court overruled his objections.

After testifying that she did not discover any injuries to A.H.'s genitalia or anus, the State asked Nurse Robison if she knew how frequently children from ages zero to thirteen exhibit injuries in sexual assault cases. Defense counsel objected based on

4

hearsay and the State inadequately laying the foundation for an expert witness, and the trial court overruled the objection. Nurse Robison then stated that "[t]he latest research shows that 95% of female children who disclose penetration have no injury." Id. at 241. Ultimately, the record does not reflect that Nurse Robison ordered any further medical treatment after her examination of A.H., but her report states that she was "strongly encouraging counseling." State's Exhibit 3 at 6.

A.H., who was five years old at the time of trial, also testified. A.H. stated that Johnson's "peanuts" went inside her "gina" and "butt," and his "peanuts" touched her "boobies." Tr. at 188-89.[1] She testified the contact with Johnson's "peanuts" and her "gina" happened when she was three, four, and five. Id. at 191. A.H. first stated nothing happened with her hands or mouth, but she then stated that Johnson's "peanuts" went into her mouth and it tasted "like milk." Id. at 189-90. A.H. also testified Johnson showed her a video with him and Lela naked, in which "Lela just sucked the peanuts." Id. at 190.

Johnson now appeals. Additional facts will be supplied as appropriate.

Discussion and Decision

I. Evidentiary Rulings

A. Standard of Review

"The decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal." Carpenter v. State, 786 N.E.2d 696, 702 (Ind. 2003) (citation omitted). We will not reverse a trial court's discretion short of an abuse of that discretion. Id. "An abuse of discretion in this context occurs

_____

[1] Johnson acknowledges in his brief that A.H. interchanged the word "penis" and "peanuts." Appeal Brief at 14.

5

where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law." Id. at 703.

## B. A.H.'s Statements to Nurse Robison

Prior to Nurse Robison testifying as to what A.H. told her during the sexual assault examination, Johnson objected and argued such testimony is hearsay, and the trial court overruled his objection. Johnson argues the trial court abused its discretion by deeming such testimony admissible because it is inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). "Hearsay is not admissible except as provided by law or by these rules." Evid. R. 802.

The State responds that Nurse Robison's testimony was admissible as an exception to the hearsay rule because it was made for the purposes of medical diagnosis or treatment. That exception is provided by our rules of evidence:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness. . . . (4) Statements made by persons who are seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Evid. R. 803. "Statements made to non-physicians may fall within Evid. R. 803(4) if the statement is made to promote diagnosis or treatment." McClain v. State, 675 N.E.2d 329, 331 (Ind. 1996). This is because, as was the case with Nurse Robison's examination of A.H., it is not important whether the person hearing the statement is an expert and able to testify regarding the proper diagnosis and treatment of the patient, what is important is whether the statement made by the patient is trustworthy. "The rationale underlying the

6

exception is that a declarant's self-interest in seeking treatment reduces the likelihood that she will fabricate information that she provides to those who treat her." Perry v. State, 956 N.E.2d 41, 49 (Ind. Ct. App. 2011) (citing McClain, 675 N.E.2d at 331). While assessing the admissibility of hearsay based on Rule 803(4), courts evaluate:

> (1) whether the declarant's motive was to provide truthful information to promote diagnosis and treatment and (2) whether the content of the statement is such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment.

Id. (citations omitted).

Statements identifying a perpetrator are typically inadmissible under the medical diagnosis exception because such statements are generally irrelevant to diagnosis and treatment. Id. However, as the State points out, this court has previously held that trial courts may exercise their discretion in admitting medical diagnosis statements which relay the identity of a perpetrator when the case involves child abuse, sexual assault, and/or domestic violence. See id. We stated the rationale for such a distinction in Perry:

> All victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser. The physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family or household. In the domestic sexual abuse case, for example, the treating physician may recommend special therapy or counseling and instruct the victim to remove herself from the dangerous environment by leaving the home and seeking shelter elsewhere. In short, the domestic sexual abuser's identity is admissible under Rule 803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes "reasonably pertinent" to the victim's proper treatment.

Id. (quoting Nash v. State, 754 N.E.2d 1021, 1024-25 (Ind. Ct. App. 2001), trans. denied); see also, Dowell v. State, 865 N.E.2d 1059, 1066 (Ind. Ct. App. 2007) (concluding victim's identification of her estranged boyfriend as her sexual attacker was

admissible under the medical diagnosis and treatment hearsay exception because part of the nurse practitioner's role was to inform the victim of available domestic dispute resources, and the nurse would need to know the victim's relationship with her perpetrator in order to know if the victim needed such resources), aff'd in part and rev'd in part on other grounds, 873 N.E.2d 59 (Ind. 2007).

This court ultimately concluded that statements identifying a perpetrator made to a nurse by an adult woman during a sexual assault examination were admissible because they were "pertinent to potential treatment for HIV or other sexually transmitted diseases, relevant to any psychological counseling for domestic abuse, and significant to medical personnel in deciding how to discharge their patient." Perry, 956 N.E.2d at 50.

Johnson argues, however, that the medical diagnosis exception does not apply because no evidence shows A.H. or Lela came "forward seeking help or treatment from anyone." Appeal Br. at 18. While evidence establishing such a circumstance is relevant to whether the declarant's motive was to provide truthful information to promote diagnosis and treatment, it is only one factor that could be considered. The absence of such a fact is not conclusive on its own. As to the evidence in the record establishing that A.H. was motivated to provide truthful information to promote diagnosis and treatment, Nurse Robison offered the following testimony concerning her examination process:

> Typically I introduce myself while they're with the care giver and tell them that I'm a nurse and I'm a special kind of nurse and that I'm going to look at them from the top of their head all the way to their toes, front and back. And then I do it again when we go into the exam room, myself and the child, again just reinforcing that I'm a nurse and I'm just going to look at them and take care of them. . . . [T]ypically as we're walking in I explain to them that I'm going to weigh them and see how tall you are . . . . We'll go into the exam room, I'll have them sit up on the chair and just tell them that we're going to talk for a few minutes and I kind of explain to them

8

what's going to happen. And then basically just find out what has happened. . . . I'll tell them to sit on the table and I'm going to look head to toe . . . and I let them know what I'm going to do . . . .

Tr. at 231-32. Nurse Robison confirmed that she followed her typical procedures when she examined A.H. We conclude Nurse Robison's testimony regarding her examination process provides a proper basis for the trial court's admission of Nurse Robison's testimony concerning A.H.'s statements to her during the examination. Nurse Robison's testimony makes it clear that she indicated to A.H. that she is a medical nurse and the purpose of the examination was to evaluate A.H. from head to toe for any medical issues. This is sufficient to conclude A.H. was motivated to provide truthful information to Nurse Robison. See Cooper v. State, 714 N.E.2d 689, 692-94 (Ind. Ct. App. 1999) (concluding evidence supported determination that child declarant's motive was to provide truthful information to promote medical diagnosis and treatment where a nurse made it clear to the child that she was in an emergency room to be examined by a physician because of a sexual assault), trans. denied. As to whether A.H.'s statements could reasonably be relied upon by a medical professional to render diagnosis or treatment, we conclude that they can. Indeed, here, Nurse Robison, a nurse specially trained to handle sexual assault examinations, relied upon A.H.'s statements in concluding that counseling for A.H. was strongly encouraged.

Nevertheless, we conclude even if Nurse Robison's testimony should not have been admitted, such error would have been harmless because sufficient evidence would still exist to support Johnson's convictions even without Nurse Robison's testimony. See Rowe v. State, 717 N.E.2d 1262, 1265 (Ind. Ct. App. 1999) ("The improper admission of evidence is harmless error when the conviction is supported by substantial independent

9

evidence of guilt sufficient to satisfy the reviewing court that there is no likelihood that the questioned evidence contributed to the conviction.") (citing Bonner v. State, 650 N.E.2d 1139, 1141 (Ind. 1995)). During A.H.'s testimony, she revealed that contact between Johnson's penis and her vagina occurred at least three times—when she was three, four, and five years old. She also stated he put his penis in her anus, and he rubbed it on her breasts. Indiana Code section 35-42-4-3(a) provides a person commits Class A felony child molesting if he or she is at least twenty-one years of age and performs sexual intercourse or deviate sexual conduct with a child under fourteen years of age. A person commits Class C felony child molesting if he fondles or touches a child under fourteen years of age, or has the child do the same to him, with the intent to arouse or to satisfy the sexual desire of either the child or the perpetrator. Ind. Code § 35-42-4-3(b).

Johnson was twenty-four years of age at the time he was charged. A.H.'s testimony alone supports his five convictions for child molesting. She referenced at least three occasions of sexual intercourse, one occasion of anal sex, and one occasion of fondling. In addition, Shawn testified he observed a video wherein A.H. was masturbating Johnson.

As to dissemination of matter harmful to minors, A.H.'s and Shawn's testimonies sufficiently support Johnson's convictions. A.H. testified Johnson showed her a video of Johnson and Lela engaging in sexual activity, and Shawn testified that Johnson displayed the video of A.H. masturbating him and Johnson had previously shown him a video of Johnson and Lela engaging in sexual activity. As to child exploitation, Shawn's testimony that Johnson videotaped A.H. masturbating him sufficiently supports his conviction. Finally, as to possession of child pornography, an Indiana State Police

forensic phone and computer examiner searched Johnson's phone and discovered child pornography. Even if Johnson did not always exclusively possess his cell phone, it is reasonable for a finder of fact to conclude the child pornography on Johnson's phone was downloaded by him where Lela specifically denied having anything to do with it and stated the phone was almost always in Johnson's possession.

## C. Nurse Robison As an Expert Witness

Johnson next argues the trial court abused its discretion in admitting Nurse Robison's testimony concerning the percentage of sexual assault cases where young girls exhibit no physical injuries. Johnson contends "[t]he record is completely devoid of any foundation established" that would allow Nurse Robison to testify as to such statistics. Appeal Br. at 19. Although it is not clear from his argument what legal authority Johnson asks us to apply, see Ind. Appellate Rule 46(A)(8)(a) (the argument section of an appellant's brief must be supported by citations to the authorities relied on), it appears he is contending the State did not sufficiently qualify Nurse Robison as an expert witness pursuant to Indiana Rule of Evidence 702(a). We disagree.

As stated above, the State elicited that Nurse Robison received healthcare technician and nursing degrees, worked for the Fort Wayne Sexual Assault Treatment Center for twelve years, attended a variety of training courses for sexual assault examinations, participated in over eight-hundred sexual assault examinations as a pediatric assistant and four-hundred and fifty-two as the primary examining nurse, and was certified to conduct sexual assault examinations by the International Association of Forensic Nurses. We conclude this sufficiently demonstrates Nurse Robison is "qualified as an expert by knowledge, skill, experience, training, or education." Id. If it is to the

specific scientific testimony that Johnson objects, pursuant to Indiana Rule of Evidence 702(b), we conclude Nurse Robison's background, training, and experience support the conclusion that the statistic she recited was reliable. We therefore conclude the trial court did not abuse its discretion in admitting Nurse Robison's testimony concerning the likelihood that a young girl would not exhibit injuries after being sexually assaulted.

We also note, however, that even if such testimony should have been excluded, any error in admitting it was harmless error. While it is true that the lack of an explanation concerning A.H. not having any physical injuries could have been a piece of evidence helpful to Johnson, we conclude a substantial amount of other evidence was presented demonstrating Johnson's guilt of each offense.

### D. Lela Johnson's History with Pornography

Prior to Johnson's trial, the State filed a motion in limine to exclude testimony from Brenda Allen that when Johnson and Lela lived with Allen, Lela downloaded child pornography on Allen's computer. The trial court granted the State's motion in limine. During trial, while Lela was testifying, defense counsel began asking questions apparently aimed at determining if Lela had downloaded the child pornography rather than Johnson. After Lela stated she did not download pornography on Johnson's phone, defense counsel asked, "[a]re you telling the folks on this jury you don't know how to access those materials?" Tr. at 305. At that point, the State and defense counsel approached the bench, and the trial court ultimately allowed the question but requested defense counsel not attempt to attack Lela's character based on her having potentially downloaded pornography, as Allen might have testified if Lela denied knowing how to

12

download pornography. Thereafter, Lela stated that she did not know how to access pornographic materials.

After the State's case in chief and outside the presence of the jury, Johnson proffered evidence, including the testimony of Allen that Lela had downloaded child pornography on Allen's computer. The trial court declared such evidence inadmissible pursuant to Indiana Rule of Evidence 403.

Johnson argues the trial court abused its discretion in determining Allen's testimony that Lela previously downloaded child pornography was inadmissible. Johnson argues he should have been able to present such testimony to impeach Lela. Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Further, Rule 404(b) provides, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." While Johnson is correct that the proffered evidence would have had some probative value by virtue of impeaching Lela's testimony that she did not know how to download pornographic materials, we conclude such probative value is substantially outweighed by the danger of unfair prejudice. Specifically, it is highly likely that testimony that Lela had previously downloaded child pornography would have been perceived as evidence establishing Lela acted in conformity with her prior actions and downloaded the pornography that was found on Johnson's phone. As demonstrated by Rule 404(b), this perception would create an unfair prejudice.

As with our prior assessments of Johnson's evidentiary claims, we also conclude that even if the trial court erred by not allowing evidence of Lela's history with

13

pornography, such error was harmless. The child pornography discovered by police was found on Johnson's phone, and Shawn's testimony reveals that Johnson used his phone for pornographic purposes. Even with evidence impeaching Lela's testimony, a reasonable finder of fact could still conclude Johnson possessed child pornography on his cellular phone.

## II. Sentencing

### A. Standard of Review

This court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B). "Our review of the sentence should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Gleason v. State, 965 N.E.2d 702, 712 (Ind. Ct. App. 2012) (citing Pierce v. State, 949 N.E.2d 349, 352 (Ind. 2011)). The defendant bears the burden of proving that the sentence is inappropriate. Id. (citation omitted).

### B. Johnson's Sentence

The statutory sentencing ranges for Johnson's felonies are as follows: for Class A felonies, twenty to fifty years, with an advisory sentence of thirty years; for Class C felonies, two to eight years, with an advisory sentence of four years; and for Class D felonies, six months to three years, with an advisory sentence of one and one-half years. Ind. Code § 35-50-2-4, -6, -7. Johnson was sentenced to fifty years for each of his three Class A felony child molesting convictions and to eight years for both of his Class C felony child molesting convictions, all to be served concurrently. He was sentenced to

14

four years for his Class C felony child exploitation conviction and one and one-half years each for his Class D felony convictions for possession of child pornography and two counts of dissemination of matter harmful to minors, all to be served consecutively to each other and consecutive to his fifty-year sentence for his child molesting convictions. In total, Johnson was sentenced to fifty-eight and one-half years in prison.

Johnson first argues the trial court abused its discretion by imposing maximum sentences for his child molesting convictions and only advisory sentences for his remaining convictions. However, trial courts have discretion in issuing sentences, and, as stated above, we review sentences for multiple convictions in the aggregate rather than the length attributed to any one individual count. Gleason, 965 N.E.2d at 712. We therefore reject Johnson's argument that the trial court abused its discretion in issuing maximum sentences for some convictions and advisory sentences for others.

Johnson also argues the above sentence is inappropriate in light of the nature of his offenses and his character. As to the nature of his offenses, Johnson contends the maximum sentences he received for his five child molesting convictions are inappropriate because they did not include "[e]xcessive brutality, use of a weapon, threats of violence or physical injury." Appeal Br. at 21. We first reiterate that we review sentences for multiple convictions in the aggregate, not based upon each individual sentence. We also point out, however, that while Johnson is correct that those elements were not revealed in the record, two characteristics of his convictions demonstrate the particularly depraved nature of his offenses and his character: A.H.'s young age at the time of the incidents, which made her especially vulnerable as easy prey, see Light v. State, 926 N.E.2d 1122, 1124 (Ind. Ct. App. 2010), trans. denied; and Johnson's position of trust in A.H.'s life as

her step-father, see Edrington v. State, 909 N.E.2d 1093, 1101 (Ind. Ct. App. 2009), trans. denied.

Despite Johnson's relatively minor criminal history that includes two juvenile adjudications from almost a decade ago and does not include any sexual offenses, we conclude his sentence is not inappropriate. That he abused his position of trust and victimized a girl when she was of the ages three, four, and five is beyond deplorable, and these facts speak to both the depravity of his offenses and character. Further, examining the aggregate sentence imposed, if Johnson were sentenced only to advisory sentences for each conviction and ordered to serve them consecutively, his sentence would have been one-hundred and six and one-half years. Because the trial court ordered his Class A felonies ordered concurrently, however, Johnson's aggregate sentence is considerably less than that. Johnson's sentence is not inappropriate in light of the nature of his offenses and his character.

## Conclusion

The trial court did not abuse its discretion in admitting Nurse Robison's testimony concerning what A.H. said during her sexual assault examination and the statistical likelihood that a sexually assaulted young girl would not exhibit injuries, nor did the trial court abuse its discretion by concluding evidence of Lela's prior experience with pornography was inadmissible. Additionally, Johnson's sentence is not inappropriate in light of the nature of his offenses and his character. We therefore affirm.

Affirmed.

BRADFORD, J., concurs.

BAKER, J., concurs in result with opinion.

16

**IN THE**
**COURT OF APPEALS OF INDIANA**

JOSHUA C. JOHNSON,    )
    )
    Appellant-Defendant,    )
    )
    vs.    )    No.  02A03-1203-CR-130
    )
STATE OF INDIANA,    )
    )
    Appellee-Plaintiff.    )

**BAKER, Judge, concurring in result,**

While I disagree with the trial court's exclusion of Allen's proffered testimony that Lela had previously downloaded child pornography, I agree that its exclusion was harmless error.