**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 12 2014, 10:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANA M. QUIRK**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN R. SIMMONS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1309-CR-830 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas A. Cannon, Jr., Judge
Cause No. 18C05-1305-FC-12

**June 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Kevin R. Simmons (Simmons), appeals his conviction for Count I, battery resulting in serious bodily injury, a Class C felony, Ind. Code § 35-42-2-1(a)(3).

We affirm.

## ISSUE

Simmons raises one issue on appeal, which we restate as: Whether the State established the *corpus delicti* of the crime of battery before Simmons' confession was admitted into evidence.

## FACTS AND PROCEDURAL HISTORY

On May 10, 2013, Simmons, Michael Hight (Hight), and Tosha Bullard (Bullard) were celebrating Bullard's twenty-fifth birthday together. Simmons was Bullard's boyfriend at the time, and Hight was a longtime friend of both Simmons and Bullard. They had drinks at a tavern in Muncie, Indiana, around 9:00pm. After leaving the bar, between 11:00pm and midnight, they stopped at a liquor store and purchased a half gallon of vodka. From there, they went to Bullard's apartment and continued drinking.

At the apartment, Hight began to flirt with Bullard and made sexual comments that led Bullard and Simmons to ask him to leave the house. Instead of leaving, Hight stayed. At some point after midnight, Bullard went upstairs to go to bed and the two men remained downstairs to continue drinking. Hight continued to make sexual comments about Bullard to Simmons. Hight went to the stairs to go upstairs, but Simmons blocked

2

his path because he thought that Hight might try to have sex with his girlfriend. Simmons punched Hight in the face and Hight fell to the ground. Simmons stomped on Hight's head as he was lying on the ground, causing him to lose consciousness. He then dragged Hight up the stairs by his feet, removed all of his clothing, and put him in the bathtub.

Early the next morning, May 11, 2013, Simmons called 911 to report that Hight had fallen in the shower. When Gary Zook (Zook), the EMS technician, arrived, he was taken to the bathroom where Hight was laying nude and dry in the bathtub. Hight had several scratches and bruises on his face and body, and the right side of his face was swollen. Hight was not verbally responsive but would groan when Zook shook or moved him. Zook expressed that Hight's injuries were inconsistent with a fall in a shower. Zook placed Hight onto a cot to take him to the ambulance and transport him to the hospital. During the transport, Zook had to restrain Hight because he was combative and wanted to get off of the cot. Zook called ahead to the hospital and requested that security meet him in the hospital emergency area upon arrival.

When Hight arrived at the hospital, Steve Blevins (Blevins), a veteran reserve Muncie Police Officer, was working security and assisted the EMS because of Hight's combativeness. Upon observing the abrasions and swelling to Hight's face, Blevins thought the circumstances were suspicious and called the Muncie Police Department to advise them that a crime had been committed. Muncie Police Officer Kevin Durbin (Officer Durbin) observed Hight, who was either asleep or unconscious, and

subsequently went to Bullard's apartment to look around. Receiving no response when he knocked on the door of Bullard's apartment, Officer Durbin contacted a security guard to obtain a key to the apartment. Upon entering the apartment, he announced his presence but received no response. He did not see any signs of struggle. He went up the stairs and saw Bullard and Simmons in the bedroom asleep. He woke them up to question them about Hight.

While speaking with Officer Durbin, Simmons stated that he, Hight, and Bullard had been drinking the prior night, and Hight went upstairs to take a shower but never returned. Simmons claimed that he went upstairs to check on Hight and found him in the shower covered with blood. At this time, Officer Durbin invited Bullard and Simmons to make a statement at the detective's bureau. During his interview, Simmons told the interviewing detective, Kyle Monroe (Detective Monroe), that he had punched Hight in the face and then stomped on his head. Simmons admitted that he dragged Hight up the stairs, removed his clothing, and placed him in the bathtub when he did not wake up.

On May 17, 2013, the State filed an Information charging Simmons with Count I, battery resulting in serious bodily injury, a Class C felony, I.C. § 35-42-2-1(a)(3). On July 30 through July 31, 2013, a jury trial was conducted. Hight was not present and did not testify. During the trial, Simmons objected to the anticipated admission of the interview prior to Detective Monroe taking the stand. He claimed that the State had not established a sufficient *corpus delicti* for the crime. The State argued that circumstantial evidence was present and sufficient to establish *corpus delicti*. The trial court admitted

the interview over Simmons' objection. At the close of evidence, the jury found Simmons guilty as charged. On August 27, 2013, the trial court held a sentencing hearing, and sentenced Simmons to a term of six years, with four years executed and two years suspended to probation.

Simmons now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Simmons claims that the trial court abused its discretion by finding that the State provided sufficient evidence to establish the *corpus delicti* of the charged offense prior to the introduction and admission of his confession into evidence. Admitting or excluding evidence has great deference on appeal and is within a trial court's discretion. *Carpenter v. State,* 786 N.E.2d 696, 702 (Ind. 2003). A court abuses its discretion when the decision to admit evidence is clearly erroneous and contrary to the logic and effect of the facts and circumstances of the case before it. *Id.* at 703. In order for a confession to be admitted into evidence at trial, there must be corroborating evidence, *i.e. corpus delicti,* that a crime has been committed. *Bynum v. State,* 498 N.E.2d 108, 109 (Ind. App. 1986).

To the extent that Simmons argues that the trial court admitted his confession into evidence *prior* to the State's establishment of *corpus delicti* for battery, this court is unable to say that the trial court abused its discretion. Traditionally, the rules regarding the order of proof mandated that the *corpus delicti* of a crime be proven prior to the introduction of any involvement by the defendant, but the court has abrogated this rule and noted that the order of evidence is determined at the discretion of the trial judge.

*Williams v. State,* 837 N.E.2d 615, 618 (Ind. 1998) (citing *Beal v. State,* 453 N.E.2d 190, 195 (Ind. 1983)).  Based on this, we discern no error related to the order of the evidence in the present case.

Insofar as Simmons argues that the State failed to establish the *corpus delicti* of battery at all, his claim equally fails.  "A crime may not be proved solely on the basis of a confession.  There must be some other proof of the crime in order to prevent convictions upon confessions to crimes which never occurred."  *Sweeney v. State,* 704 N.E.2d 86, 11 (Ind. 1988).  The *corpus delicti* of a crime must be established by independent evidence of both (1) the occurrence of the specific kind of injury and (2) someone's criminal act as the cause of the injury.  *Williams,* 837 N.E.2d at 617.  "The independent evidence need not be shown beyond a reasonable doubt; rather, the evidence need only provide an inference that a crime was committed."  *Id.* at 617-18.  The inference can be established through circumstantial evidence.  *Id.* at 618.  Thus, the *corpus delicti* of battery requires that some harmful touching has occurred and that a criminal act was likely a cause of that harm.  Simmons conceded that the State presented evidence that showed that Hight suffered injuries at some time after Bullard went upstairs to sleep.  Therefore, the only remaining question is whether the State presented evidence inferring that someone's criminal act caused the injury.  *See id.*

In support of his argument that the State did not provide sufficient evidence to create an inference that Hight's injuries were caused by someone's criminal conduct, Simmons argues that there was no medical evidence presented that established specific

6

details about what caused Hight's injuries or if they could only have been caused by another person. In addition to this, Simmons also mentions Bullard's testimony that she did not hear any signs of a struggle after she went to sleep.

During trial, the State presented evidence that Simmons, Hight, and Bullard were at Bullard's apartment, drinking alcohol between 11:00pm and midnight. They were the only three people in the apartment that night. The evidence reflects that Hight upset both Bullard and Simmons by making sexual comments about Bullard. Simmons and Bullard both asked Hight to leave the apartment but he remained. At some point Bullard went to sleep, and Hight and Simmons continued to drink. During this time, Hight continued to make sexual comments about Bullard to Simmons. Hight's demeanor became increasingly angry and disrespectful as time passed. There was no evidence that an unknown third party came to the apartment after Bullard went to sleep. Simmons' 911 call was placed at 6:47am on May 11, 2013, and the paramedics were dispatched to the apartment. Zook, the paramedic that arrived at the apartment to treat Hight; Blevins, the veteran reserve police officer working security at the hospital; and Officer Durbin all testified that the injuries sustained by Hight were severe and inconsistent with Simmons' 911 report that Hight had fallen in the bathtub. They all based their opinions about the injuries on their experiences within their respective fields. As no fall could have caused Hight's specific injury, a logical inference can be drawn that the injuries were caused by a criminal act. Therefore, the *corpus delicti* was established and the trial court properly admitted Simmons' confession.

7

## CONCLUSION

Based on the foregoing, we conclude that the State did provide evidence sufficient to establish the *corpus delicti* of the crime of battery and that the trial court did not abuse its discretion in admitting the confession of Simmons into evidence.

Affirmed.

ROBB, J. and BRADFORD, J. concur