

IN THE

# Court of Appeals of Indiana

Justin R. Hogg,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

FILED

Mar 27 2024, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

March 27, 2024

Court of Appeals Case No.
23A-CR-525

Interlocutory Appeal from the Cass Superior Court

The Honorable James Muehlhausen, Judge

Trial Court Cause No.
09D01-2005-F6-130

**Opinion by Judge May**
Chief Judge Altice and Judge Foley concur.

**May, Judge.**

[1] Justin R. Hogg appeals the trial court's denial of Hogg's motion to dismiss the "*five* additional criminal charges" filed by the State after Hogg's conviction of Level 6 felony theft[1] was reversed on appeal due a material variance between the charging information and the evidence presented at trial. (Appellant's Br. at 4) (emphasis in original). Hogg argues the five new charges represent impermissible prosecutorial vindictiveness, and we agree. We reverse the trial court's denial of Hogg's motion to dismiss the five additional charges and remand for further proceedings not inconsistent with this opinion.

## Facts and Procedural History

[2] The underlying facts are these:

> Sometime prior to March 5, 2020, Hogg, Chad Myer (Hogg's romantic partner), and Gail Slavens (their mutual acquaintance) created false payroll checks that purported to be from a business identified as Last Call, LLC, which business did not in fact exist. The trio made at least six checks: one payable to "Robert Shane Madewell," one payable to Hogg, two payable to Myer, and two payable to Slavens. Each check appeared to be payable in an amount of about $1000.
>
> On March 5, the three entered the Dutch Mill bar in Logansport. Slavens and Myer each cashed one of the false checks that had been made payable to them. Hogg cashed the false check made payable to Madewell, which was in the amount of $989.19. In

---

[1] Ind. Code § 35-43-4-2(a).

endorsing that check, Hogg appears to have initially written a large letter J, but he then wrote "Robert Madewell" over it.

In the early morning hours of March 7, the three entered the Dutch Mill bar to cash the other false checks. Slavens and Myer again each cashed one of the false checks that had been made payable to them. Hogg cashed the check appearing to bear his name. That check was in the amount of $984.79. In his later testimony, Alex Maloy, an owner of the Dutch Mill bar, stated that, while the second-round of false checks were cashed on March 7, the Dutch Mill bar's practice was to record those transactions as having occurred on March 6 because the bar had not yet closed down for that evening.

*Hogg v. State*, 187 N.E.3d 950, Case No. 21A-CR-2251, memo. op. at *1 (Ind. Ct. App. April 25, 2022) (internal record citations omitted).

[3]     On May 13, 2020, the State charged Hogg with Level 6 felony check deception[2] and Level 6 felony theft in a charging information that alleged, respectively:

Count 1 [check deception]:

[O]n or about March 6, 2020, in Cass County . . . Hogg did knowingly issue or deliver a check to acquire money or other property, having a value of at least $750, but less than $50,000[,] knowing that said check would not be paid or honored by the credit institution[ ] upon presentment in the usual course of business . . . .

---

[2] Ind. Code § 35-43-5-5(a)(1) (repealed effective July 1, 2021, by P.L. 174-2021).

Count 2 [theft]:

> [O]n or about March 6, 2020, in Cass County . . . Hogg did knowingly or intentionally exert unauthorized control over the property of Dutch Mill, with the intent to deprive Dutch Mill of any part of the use or value of the property, said property having a value of at least [$750] and less than the value of [$50,000], to wit: $984.7[9] . . . .

(Appellant's App. Vol. 2 at 31.)  Then, on September 25, 2020, the State amended the information by adding a count of Level 6 felony counterfeiting[3] in an information that provided:

> [O]n or about March 6, 2020, in Cass County . . . Hogg[ ] did knowingly or intentionally make or utter a written instrument, in such a manner that it purports to have been made by another person . . .

(*Id*. at 86.)  The State also alleged Hogg was a habitual offender.

[4] The State then moved to join Myer and Slavens with Hogg as co-defendants. Hogg objected, but the trial court granted the State's motion.  Myer pled guilty and Slavens absconded, so the State proceeded against Hogg individually.

[5] At Hogg's trial, the State offered into evidence all six of the false checks cashed at Dutch Mill.  Hogg objected on the basis that the check deception and counterfeiting charges against him alleged "a check" and "a written

---

[3] Ind. Code § 35-43-5-2(a)(1)(A).

instrument" while the theft charge alleged the specified amount of "$984.7[9,]" which was the value of the check that Hogg cashed at Dutch Mill in the early morning hours of March 7. *Hogg*, 21A-CR-2251, memo. op. at \*2. Hogg also requested the court grant a mistrial. The State argued mistrial was improper and admission was appropriate because all six of the checks were proof of the charged acts that occurred "on or about March 6[.]" *Id*. at \*3. The trial court overruled Hogg's objection and denied Hogg's motion for mistrial. The jury found Hogg guilty of all three charges. At sentencing, the State conceded the evidence for all three charges was the same, so the trial court "merged Hogg's convictions"[4] of check deception and counterfeiting into the conviction of theft. *Id*. at \*5. The court imposed a two-year sentence for Level 6 felony theft and enhanced it by five years for Hogg being a habitual offender.

[6] Hogg appealed and argued the evidence presented by the State at trial varied materially from the charges that had been filed against him, such that he had been prejudiced in the preparation of his defense. On April 25, 2022, we handed down an opinion that explained:

> We agree with Hogg that the allegations in the charging instrument against him and the evidence used at his trial were not consistent. The State alleged, albeit across three counts, a

---

[4] We note, as did our colleagues in the prior opinion of this court, that merger of convictions is inadequate to remedy a double jeopardy violation. *See Hogg*, 21A-CR-2251, memo. op. at \*5 n.1. Instead, the trial court should note the multiple guilty findings in the record but then enter a single conviction. *Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) (double jeopardy occurs when court enters multiple judgments of conviction for the same crime, but multiple jury verdicts are unproblematic for double jeopardy purposes, so courts should merge (but not vacate) the guilty findings and enter a single conviction).

single criminal act: that on or about March 6, 2020, Hogg tendered one false check.  Each of the three charges refers to a single check or written instrument.  Count 1 identified "a check" and referred to the range of value of "said check."  Count 2 specifically identified the amount of the check at issue, $984.79, which was the check that had been made payable to Hogg.  And Count 3 accused Hogg of having made or uttered "a written instrument"—not multiple instruments.

Further, the "on or about March 6, 2020" language used in each of the State's charges was at best confusing.  Without question, as the prosecutor emphasized at trial, time was not of the essence to the State's charges here, and, thus, it was not necessary for the State to prove that Hogg's act occurred on the date alleged.  *See Barger v. State*, 587 N.E.2d 1304, 1307 (Ind. 1992).  Still, coupled with the singular references to "a check" and "a written instrument" and the specific identification in Count 2 to the check payable to Hogg, the most natural reading of the "on or about March 6, 2020" language is that that date referred to the check Hogg cashed at the Dutch Mill bar in the early morning hours of March 7, which the Dutch Mill bar had recorded as a March 6 transaction.

Thus, the charging instrument put Hogg on notice only that he had been accused of committing a single criminal act, which act could have resulted in a conviction for one, but only one, count of check deception, theft, or counterfeiting.

Nonetheless, at trial the State's evidence was far more expansive than the charging instrument suggested.  The State presented evidence that Hogg had presented two false checks to the Dutch Mill bar on two different days; that Hogg had forged a third-party's signature on the March 5 check payable to Robert Madewell; and that Hogg, Myer, and Slavens had acted as accomplices in repeatedly deceiving the Dutch Mill bar.  On this latter point, the prosecutor was explicit that the false checks

made payable to Myer and Slavens on both March 5 and March 7 were also independent factual bases on which the jury could find Hogg guilty.

Thus, the State's evidence at trial was not that Hogg had committed a single criminal act. Rather, the State's evidence was that Hogg, Myer, and Slavens had engaged in a criminal conspiracy and, individually and collectively, had engaged in at least six criminal acts.

The variance between the State's charges and evidence here is far more expansive than the misidentification of the necessary law-enforcement officer's identity in *Whaley* [*v. State*, 843 N.E.2d 1 (Ind. Ct. App. 2006), *trans. denied*]. Further, the "means used" in the State's charges against Hogg – the singular, March 7 check payable to him – was far different from the "means used" in the State's evidence against Hogg – the apparent criminal conspiracy and each of the six checks made payable to Madewell, Myer, Slavens, and Hogg across two days. Moreover, the authority cited by the State in its brief discusses variances in nonessential details, not variances in what the underlying offenses even are or the factual bases for them. We therefore are not persuaded by the State's cited authorities.

The State's notice to Hogg of its charges against him and the actual evidence presented at his trial was inconsistent. The State's charging instrument did not put Hogg on notice of a criminal conspiracy or that he would be tried for any of the five false checks that did not bear his name.

We also agree with Hogg that this variance misled him in his preparation of his defense. At trial, Hogg argued that he lacked knowledge that the checks were false, and that Myer had deceptively created the checks and presented the checks to Hogg as legitimate. The State's more expansive evidence at trial, of

course, undermined that defense. Further, as Hogg's counsel made clear at trial, the State's charging information misled Hogg in the scope of his requested pretrial motions in limine, in which Hogg sought to properly discern and limit the scope of other acts that would and would not be available against him at trial.

We thus turn to whether the variance resulted in prejudice against Hogg. Here, we emphasize both that Hogg's defense was misled as explained above, and, further, that the prosecutor informed the jurors that it could find Hogg guilty on a variety of the acts that were not alleged in the charging information. Because of this, we have no way to discern if the jurors unanimously found Hogg guilty for presenting the false March 7 check payable to him, or if instead the jurors relied unanimously or in part on the Madewell check, either of the Myer checks, either of the Slavens checks, or on a theory of accomplice liability. In short, we cannot say with confidence what the factual basis for the jury's verdict was. Therefore, we agree with Hogg that the variance resulted in prejudice against him and denied his due process rights.

*Hogg*, 21A-CR-2251, memo. op. at *6-*7 (footnote omitted) (record citations omitted) (italics in original). We accordingly reversed Hogg's conviction of theft.[5] *Id*. at *7 ("We reverse his conviction for Level 6 felony theft.").

---

[5] The other two convictions were also reversed by implication. *See Hogg*, 21A-CR-2251, memo. op. at *5 n.1 ("in light of our resolution of this appeal, we need not remand with instructions for the trial court to vacate the judgment of conviction entered on Counts 1 and 3").

[7]     On June 13, 2022, the State filed a new charging information (hereinafter "2022 Information") that deleted the counterfeiting count and added five new counts against Hogg:

> Count 1 [Level 6 felony conspiracy to commit check deception]:
>
> [B]etween March 5, 2020 and March 7, 2020 in Cass County . . . Hogg, with the intent to commit the felony of check deception, did agree with another person or persons, to wit: Gail Slavens or Chad Myer, to commit the felony of check deception, to wit: to knowingly issue or deliver a check to acquire money or other property having a value of at least $750, but less than $50,000 knowing that said check would not be paid or honored upon presentment in the usual course of business[.]
>
> Count 2 [Level 6 felony conspiracy to commit theft]:
>
> [B]etween March 5, 2020 and March 7, 2020 in Cass County . . . Hogg, with the intent to commit the felony of theft, did agree with another person or persons, to wit: Gail Slavens or Chad Myer, to commit the felony of theft, to wit: to knowingly or intentionally exert unauthorized control over the property of Dutch Mill, with the intent to deprive Dutch Mill of any part of the use or value of the property, said property having a value of at least [$750] and less than the value of [$50,000.]
>
> Count 3 [Level 6 felony conspiracy to commit counterfeiting]:
>
> [B]etween March 5, 2020 and March 7, 2020 in Cass County . . . Hogg, with the intent to commit the felony of counterfeiting, did agree with another person or persons, to wit: Gail Slavens or Chad Myer, to commit the felony of counterfeiting, to with [sic]: to knowingly or intentionally make or utter a written instrument,

in such a manner that it purports to have been made by another person[.]

Count 4 [Level 6 felony check deception]:

[O]n or about March 5, 2020 in Cass County . . . Hogg did knowingly deliver a check, in the amount of $989.19 to acquire money, having a value of at least $750, but less than $50,000 knowing that said check would not be paid or honored upon presentment in the usual course of business[.]

Count 5 [Level 6 felony theft]:

[O]n or about March 5, 2020 in Cass County . . . Hogg did knowingly or intentionally exert unauthorized control over the property of Dutch Mill, to-wit: cash, with the intent to deprive Dutch Mill of any part of the use or value of the property, said property having a value of at least [$750] and less than the value of [$50,000], to-wit: $989.19[.]

Count 6 [Level 6 felony check deception]:

[O]n or about March 7, 2020 in Cass County . . . Hogg did knowingly deliver a check, in the amount of $984.79 to acquire money, having a value of at least $750, but less than $50,000 knowing that said check would not be paid or honored upon presentment in the usual course of business[.]

Count 7 [Level 6 felony theft]:

[O]n or about March 7, 2020 in Cass County . . . Hogg did knowingly or intentionally exert unauthorized control over the property of Dutch Mill, to-wit: cash, with the intent to deprive Dutch Mill of any part of the use or value of the property, said

> property having a value of at least [$750] and less than the value
> of [$50,000], to-wit: 984.79[.]

(Appellant's App. Vol. 2 at 236-38.)

[8] On July 21, 2022, Hogg filed a motion to dismiss and a memorandum in support thereof. Hogg argued the State's filing of five additional charges after Hogg's successful appeal constituted impermissible prosecutorial vindictiveness and impermissible successive prosecution because the State had all the same evidence and could have filed the additional charges before Hogg's first trial. The trial court held a hearing on Hogg's motion on July 28, 2022. Hogg's counsel argued:

> There's no Motion that's been presented as to why they're asking for the charges to be amended or to add the charges two years after the original charges have been made and after a trial has already been done and the same evidence that was used at that trial, they're going to want to use at another trial after they've amended these charges. . . . [T]hey already had the opportunity to do that, and the discretion was up to the prosecutor to amend those charges prior to us having the trial.

(Tr. Vol. 2 at 34-35.) In response the State asserted:

> We're not filing new charges. We're filing the exact same thing in conformity with the instructions given by the Court of Appeals. The issue raised here addressed very clearly by the Court of Appeals was, was due process by way of notice, which we've amended. We've given plenty of notice here. So, there, there's no additional charges being brought here. If I was vindictive, I'll file a level 5. There's a level 5 to be had here. Right? This is corrupt business influence to a T. This is an

enterprise, which is a group of two or more people or a business, whether, you know, incorporated in fact engaging in a pattern, which is two or more acts of racketeering and activity, which includes things like forgery and fraud and theft. So, a level 5 is out there. Sadly, I can't, I can't file that. That would be deemed vindictive on its face. Not doing that. These were all level 6's before, they're level 6's now and the charges that were merged before into two will be merged in this case. We just broadened the theory in conformity with the instructions given by the, by the Opinion, the written Opinion.

(*Id*. at 37-38.) The trial court denied Hogg's motion to dismiss, and Hogg asked the trial court to certify the order denying his motion to dismiss for interlocutory appeal. The trial court so certified, and we accepted jurisdiction over his appeal.

## Discussion and Decision

[9] A trial court's decision whether to dismiss a charging information should be reviewed for an abuse of discretion. *State v. Davis*, 898 N.E.2d 281, 285 (Ind. 2008). An abuse of discretion has occurred if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the trial court," or if the trial court "misinterpreted or misapplied the law." *State v. Smith*, 179 N.E.3d 516, 519 (Ind. Ct. App. 2021), *trans. denied*. To the extent the parties' arguments raise questions of law, we review those issues de novo. *See Easler v. State*, 131 N.E.3d 584, 588 (Ind. 2019) ("This Court reviews pure questions of law de novo.").

"[C]ourts have the inherent authority to dismiss criminal charges where the prosecution of such charges would violate a defendant's constitutional rights." *Davis*, 898 N.E.2d at 285. Indiana Code section 35-34-1-4 (2004) also provides a "non-exclusive list of reasons allowing dismissal of an indictment or information." *Davis*, 898 N.E.2d at 285. The provision in that statute barring prosecution "by reason of a previous prosecution[,]" Ind. Code § 35-34-1-4(a)(7), is based in the Fifth Amendment's prohibition of double jeopardy. *Davis*, 898 N.E.2d at 285. "Whether a prosecution is barred by double jeopardy is a question of law." *Smith v. State*, 993 N.E.2d 1185, 1189 (Ind. Ct. App. 2013) (quoting *Swenson v. State*, 868 N.E.2d 540, 542 (Ind. Ct. App. 2007)), *reh'g denied*, *trans. denied*.

As the State notes in its brief, a defendant generally may be retried after a conviction is reversed on appeal, (Appellee's Br. at 11) (citing *Dexter v. State*, 959 N.E.2d 235, 240 (Ind. 2012)), unless the "conviction is reversed due to insufficient evidence because such a reversal is tantamount to an acquittal." *Dexter*, 959 N.E.2d at 240. Herein, though, Hogg's convictions were not reversed because the State presented insufficient evidence. Instead, his convictions were reversed because the trial court permitted the State to present too much evidence regarding criminal acts for which the charging information had not given Hogg notice that he would be on trial. *See Hogg*, 21A-CR-2251, memo. op. at *6-*7 ("[T]he charging instrument put Hogg on notice only that he had been accused of committing a single criminal act . . . . [T]he State's evidence was that Hogg, Myer, and Slavens had engaged in a criminal

conspiracy and, individually and collectively, had engaged in at least six criminal acts.").

[12] When convictions are reversed due to improper admission of evidence, double jeopardy concerns usually do not apply. *Walters v. State*, 120 N.E.2d 1145, 1156 (Ind. Ct. App. 2019) (citing *Thompson v. State*, 690 N.E.2d 224, 237 (Ind. 1997)). Rather, "if all the evidence, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charge." *Carpenter v. State*, 786 N.E.2d 696, 705 (Ind. 2003) (quoting *Stahl v. State*, 686 N.E.2d 89, 94 (Ind. 1997)). In light of all the evidence admitted at Hogg's prior trial, we have no trouble determining the record contained sufficient evidence to prove that, in the early morning hours of March 7, 2020, Hogg presented a fake check to the Dutch Mill bar to obtain $984.79 from Dutch Mill while knowing Dutch Mill would be unable to collect that money from a credit institution upon presentment of the check in the usual course of business. *See, e.g.*, *Neese v. State*, 994 N.E.2d 336, 339 (Ind. Ct. App. 2013) (evidence sufficient to support conviction of check deception when defendant traded her check for acquaintance's cash knowing acquaintance could not obtain cash from bank because defendant had closed the checking account). Accordingly, double jeopardy does not prohibit Hogg's retrial. *See, e.g.*, *Carpenter*, 786 N.E.2d at 705 (holding Carpenter could be retried following reversal of his convictions for improper admission of evidence because the evidence presented at his first trial was sufficient to support his convictions).

[13] Nevertheless, the parties disagree about the charges for which Hogg may be tried at a second trial. We begin by pointing back to language from *Carpenter*: "double jeopardy does not bar a retrial *on the same charge*." 786 N.E.2d at 705 (emphasis added). As our prior opinion made clear, the original charging instrument charged Hogg with "a single criminal act, which act could have resulted in a conviction for one, but only one, count of check deception, theft, or counterfeiting." *Hogg*, 21A-CR-2251, memo. op. at *6. Because we held those are the charges for which Hogg stood trial in his first trial, *see id.*, the State was entitled to try Hogg a second time for check deception, theft, and counterfeiting based on Hogg's passing of a fake check for $984.79 at Dutch Mill in the early morning hours of March 7, 2020. *See*, *e.g.*, *Carpenter*, 786 N.E.2d at 705 (holding Carpenter could be retried following reversal of his convictions for improper admission of evidence because the evidence presented at his first trial was sufficient to support his convictions).

[14] Rather than retry Hogg based on the original charging information, on June 13, 2022, the State filed a new seven-count charging information that included five new Level 6 felony charges based on criminal behavior that occurred on March 5, 2020, and/or in cooperation with Myer or Slavens. Hogg argues this filing of new charges after his successful appeal demonstrates prosecutorial vindictiveness that violates his right to due process. As our Indiana Supreme Court made clear more than forty years ago,

> when the prosecution has occasion to file more numerous or
> more severe charges for the same basic criminal conduct against

an accused after the accused has successfully exercised his statutory or constitutional rights to an appeal, the prosecution bears a heavy burden of proving that any increase in the number or severity of the charges was not motivated by a vindictive purpose.

*Cherry v. State*, 275 Ind. 14, 20, 414 N.E.2d 301, 305 (1981). "[U]nless there is new evidence or information discovered to warrant additional charges, the potential for prosecutorial vindictiveness is too great for courts to allow the State to bring additional charges against a defendant" after that defendant exercises his right to a fair trial by moving for a mistrial. *Warner v. State*, 773 N.E.2d 239, 243 (Ind. 2002). Moreover, the rationale for protecting the right to a fair trial, which supports the presumption of prosecutorial vindictiveness, "is even more compelling in the case of a successful appeal than in the case of a successful motion for a mistrial" because, in Indiana, convicted persons have a constitutional right to an appeal. *Owens v. State*, 822 N.E.2d 1075, 1077 (Ind. Ct. App. 2005).

[15] The State argues it is permitted to bring the five additional charges because "the State is not alleging any new criminal acts nor seeking more severe penalties." (Appellee's Br. at 14.) We find the State's argument disingenuous.

[16] First, our prior opinion made clear that Hogg had been charged for only one criminal act – the one alleged to have occurred when he cashed a check for $984.79 at Dutch Mill in the early morning hours of March 7, 2020. Accordingly, a charge based on any other alleged criminal act – whether a conspiracy with Myer or Slaven or a check cashed by Hogg on March 5, 2020 –

is, in fact, an allegation of a criminal act that had not been charged prior to Hogg's first trial and appeal. Thus, the five additional counts are "new" criminal allegations. *See* Webster's New English Dictionary, "new" (Third Ed., 1976) ("having existed or having been made but a short time: having originated or occurred lately: not early or long in being: RECENT, FRESH, MODERN – opposed to old") (formatting in original).

[17] Second, in circumstances such as this, due process prohibits the State from seeking not just "more severe penalties[,]" (Appellee's Br. at 14), but also from seeking a greater number of convictions. *See Cherry*, 275 Ind. at 20, 414 N.E.2d at 305 ("more numerous or more severe charges"). The State claims it seeks only one conviction. (Appellee's Br. at 17) ("only one conviction will survive (along with the habitual enhancement)"). However, the additional criminal charges filed by the State allege wholly separate criminal behavior that, while part of a single plan or scheme, could result in multiple convictions that would not merge under our State's double jeopardy jurisprudence. *See*, *e.g.*, *Littlefield v. State*, 215 N.E.3d 1081, 1088 (Ind. Ct. App. 2023) (simultaneous convictions of murder and conspiracy to commit that murder did not violate Indiana Constitution's prohibition of double jeopardy), *trans. denied*.

[18] The State may not obtain the one conviction it seeks by charging additional crimes that the State could have charged prior to the first trial. *See Warner v. State*, 773 N.E.2d 239, 243-44 (Ind. 2002) ("Having known of the attempted robbery evidence it used at the second trial all along, notions of fundamental fairness dictate that it was improper for the State to add the new counts [of

felony murder and attempted robbery] after Warner exercised his right to a fair trial [on a charge of murder].").  The trial court abused its discretion when it denied Hogg's motion to dismiss the five new charges filed against Hogg after he exercised his constitutional right to an appeal.  *See*, *e.g.*, *id*. at 244 (holding trial court erred by allowing the State to amend the charges to allege two additional crimes after defendant exercised his right to a fair trial).

## Conclusion

Following reversal for improper admission of evidence, Hogg may be retried for the same charges, but the State may not add any additional charges based on the same evidence.  The trial court therefore abused its discretion by denying Hogg's motion to dismiss the five new charges the State filed on June 13, 2022.  We reverse the trial court's denial of that motion and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Altice, C.J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana